UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**CHARLES JAMES GRAPSKI**,            )
                                     )
         Plaintiff,                  )         CASE NO.:  1:10-cv-00140-MP-GRJ
v.                                   )
                                     )
**CITY OF ALACHUA, FLORIDA**,        )
a Florida municipal corporation,     )
**CLOVIS WATSON, JR.**, individually, )
**JEAN CALDERWOOD**, individually,    )
**ROBERT E. JERNIGAN**, individually, )
**GIB COERPER**, individually, and    )
**PATRICK BARCIA, JR.**, individually, )
                                     )
         Defendants.                 )
_____/

# AMENDED COMPLAINT

Plaintiff brings this suit pursuant to 42 U.S.C. §1983 seeking damages arising from certain policies, practices and actions of the City of Alachua, and certain of its individual officers and representatives, which have violated Plaintiff's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.

## JURISDICTION

1.     This suit is brought pursuant to 42 U.S.C. §1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

2.     This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C.

§1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution, and under 28 U.S.C. §1343(4) to secure equitable or other relief for the protection of civil rights.

3.      This Court is authorized to award damages for violation of Plaintiff's constitutional rights under 42 U.S.C. §1983.

4.      This Amended Complaint seeks damages for violations of GRAPSKI's rights, privileges and immunities secured by the First, Fourth and Fourteenth Amendments to the Constitution.

5.      This Court may enter an award of attorney's fees pursuant to 42 U.S.C. §1988.

6.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1366.

7.      Plaintiff has satisfied the notice requirements of §768.28(6) Fla.Stat. by notifying the Mayor of ALACHUA by letters dated November 22, 2006, in regard to claims arising out of incidents that occurred in 2006, and dated February 19, 2007 and October 12, 2007, in regard to incidents that occurred in 2007. A copy of that correspondence is attached as Composite Exhibit "A" to this Amended Complaint.

8.      ALACHUA received the notice letter pertaining to 2006 incidents in 2006.

9.      ALACHUA received the notice letters pertaining to 2007 incidents in 2007.

10.      Plaintiff has complied with all conditions precedent to maintaining this action or those conditions have been waived or become moot.

**VENUE**

11.     Venue is proper in the Northern District of Florida, Gainesville Division, since the policies and acts complained of are those of the CITY OF ALACHUA, FLORIDA, which is within the district and geographical area assigned to the Gainesville Division.

**PARTIES**

12.     At all times relevant hereto, Plaintiff CHARLES JAMES GRAPSKI (hereinafter referred to as "GRAPSKI") was a citizen and elector of Alachua County and the State of Florida.

13.     At all times relevant hereto, the CITY OF ALACHUA, FLORIDA (hereinafter referred to as "ALACHUA" or the "CITY") was a Florida municipal corporation established in accordance with Article VIII §2, Florida Constitution or preceding constitutional provisions.

14.     At all times relevant hereto, CLOVIS WATSON, JR. (hereinafter referred to as "WATSON"), was City Manager of the City of Alachua. At all relevant times, WATSON was also designated as Alachua's Police Commissioner. WATSON is sued in his individual capacity.

15.     At all times relevant hereto, ALACHUA had reported to the Florida Department of Law Enforcement that WATSON was employed by ALACHUA as a full time law enforcement officer.

16.     At all times relevant hereto, JEAN CALDERWOOD (hereinafter referred to as "CALDERWOOD"), served as a representative of the City of Alachua. At times she held the position of Mayor of the City of Alachua, and at other times she served in the

capacity of a City Commissioner of the City of Alachua. CALDERWOOD is sued in her individual capacity.

17.    At all times relevant to allegations involving GIB COERPER (hereinafter referred to as "COERPER"), that individual served as Mayor of the City of Alachua. COERPER is sued in his individual capacity.

18.    At all times relevant hereto, ROBERT E. JERNIGAN (hereinafter referred to as "JERNIGAN"), was employed by ALACHUA as Chief of Police. JERNIGAN is sued in his individual capacity.

19.    At all time relevant hereto, PATRICK BARCIA, JR. (hereinafter referred to as "BARCIA") was a police officer employed by the CITY OF ALACHUA. BARCIA is sued in his individual capacity.

## FACTS

20.    GRAPSKI is a political and social activist with a keen interest in the governance and operations of the CITY OF ALACHUA.

21.    GRAPSKI has led a campaign to foster strict compliance with the public records laws of the State of Florida (Chapter 119) and is particularly interested in what he believes is the blatant disregard of those laws by ALACHUA. GRAPSKI has submitted frequent public records requests to the CITY on his own behalf and as a principal in a non-profit corporation known as The Open Records Project, Inc.

22.    GRAPSKI has also been a vocal critic of the City administration and of certain City personnel, including Defendants WATSON, CALDERWOOD and JERNIGAN. Part of that criticism has centered on the fact that WATSON held a variety of positions in City government in apparent violation of Florida law.

23.     GRAPSKI has been a frequent speaker at public hearings, including City Commission meetings.

24.     GRAPSKI has also been active in political protests and litigation against the CITY OF ALACHUA and various officials of the CITY with respect to the 2006 City election which was marred by voter fraud and widespread procedural irregularities.

25.     Plaintiff has a constitutional right to petition government for redress of grievances.

26.     Plaintiff has a constitutional right to engage in political speech and to speak with representatives of CITY government on matters of concern to the Plaintiff.

27.     Plaintiff has a constitutional right to access public property and public officials on the same terms and conditions as other citizens of ALACHUA.

28.     Plaintiff has the right under the Florida Constitution and Florida law to request and access public records.

29.     The CITY and the individual Defendants, WATSON, CALDERWOOD JERNIGAN and COERPER, have engaged in a concerted campaign over the course of several years, to thwart Plaintiff's efforts to secure public records, to speak before the Alachua City Commission, to seek redress of his several grievances with government and to cause him physical harm and emotional anguish. This campaign was conducted through a serious of unlawful arrests, false prosecutions, public ridicule, banishment from CITY property, police harassment and physical assaults, all in an effort to impede and deter Plaintiff from exercising his constitutional rights and to punish him for exercising those rights.

30.     The CITY and the individual Defendants, WATSON, CALDERWOOD

JERNIGAN and COERPER, further intended "to make an example of GRAPSKI" so that other citizens would be dissuaded from seeking public records and deterred from exercising their constitutional rights.

31.     The campaign by the CITY and the individual Defendants, WATSON, CALDERWOOD, JERNIGAN and COERPER is the result of an actual policy of the CITY to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests, harassment and public ridicule.

32.     While not reduced to writing, this policy has been established by a long course of conduct and harassment directed to Plaintiff and his supporters. Furthermore, these official policies are universally understood, consistently applied and adopted as part of the "culture" of the City of Alachua Police Department.

33.     Furthermore, the established policy to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests and public ridicule was the result of intentional decisions by the CITY's final policy-makers.

34.     The individual or individuals charged with making the final decision as the CITY's policy-maker varies depending upon circumstances which will be elucidated in detail below. At various times and in various circumstances, WATSON, CALDERWOOD JERNIGAN and COERPER have each acted at the final policy-maker for the CITY.

## 2006 ARREST – ALLEGED ILLEGAL RECORDING

35.     The first overt actions against Plaintiff came in late April and early May of 2006.

36.     At that time, GRAPSKI was a candidate for the House of Representatives

of the State of Florida in the district that includes the City of Alachua within its constituency.

37.     Eileen McCoy, a citizen of Alachua, commenced civil action 06 CA-1590 in the Circuit Court for the Eighth Judicial Circuit of Florida in and for Alachua County to contest Alachua's 2006 election. An organization in which GRAPSKI was a principal joined as a plaintiff in that civil action.

38.     On April 28, 2006, GRAPSKI and McCoy went to ALACHUA's City Hall for the purpose of inspecting and copying public records pertaining to the 2006 election.

39.     When ALACHUA's officials denied GRAPSKI's request for inspection, GRAPSKI and McCoy went to WATSON's office to request his assistance in obtaining those public records.

40.     In order to document his efforts at obtaining public records from the CITY, GRAPSKI recorded his conversation with WATSON. The conversation was recorded on a tape recorder placed in plain view on WATSON's desk and WATSON consented to the recording of the conversation, which consent is evident on the recording as well as by the circumstances.

41.     WATSON decided at that time that he could use the recording of his conversation as a pretext to arrest GRAPSKI to prevent him from accessing those public records and to deter GRAPSKI from his political activities in the CITY.

42.     GRAPSKI returned to ALACHUA's City Hall on Monday, May 1, 2006, for the purpose of inspecting the public records pertaining to the 2006 election. That inspection was pursuant to arrangements made with WATSON during GRAPSKI's

meeting on April 28, 2006.

43.     While GRAPSKI was inspecting the election records WATSON arrested GRAPSKI, or directed Chief JERNIGAN to arrest GRAPSKI, on charges that GRAPSKI had illegally recorded the conversation of April 28, 2006 referred to herein.

44.     WATSON made the decision to arrest GRAPSKI while acting as ALACHUA's City Manager.  As City Manager, WATSON had the authority to make this decision on behalf of ALACHUA and he made the decision as the final decision making authority for the CITY.

45.     GRAPSKI's arrest on May 1, 2006 was entirely pretextual and without probable cause. The arrest was an intentional and calculated action to harass Plaintiff and to punish him for the exercise of his constitutional rights.

46.     No reasonable police officer and no reasonable City Manager could have believed that there was any probable cause or other basis under law to arrest GRAPSKI for the perfectly legal act of recording the City Manager in the course of his duties and with his consent.

47.     GRAPSKI was incarcerated in the Alachua County jail on May 1, 2006 and remained there until the morning of May 2, 2006.

48.     The CITY, WATSON and CALDERWOOD elected to press charges against GRAPSKI despite the obvious lack of probable cause to arrest or prosecute GRAPSKI for the perfectly legal act of recording the City Manager in the course of his duties and with his consent.

49.     WATSON and ALACHUA arrested and charged GRAPSKI with a crime with the specific intent and purpose of interfering with GRAPSKI's constitutional rights

to inspect ALACHUA's public records; to instruct his representatives and to petition for redress of grievances guaranteed by Article I, §5 Florida Constitution; and to petition for redress of grievances guaranteed by the First and Fourteenth Amendments to the United States Constitution.

50.   These actions were taken as part of a calculated and intentional effort to thwart GRAPSKI in his efforts to challenge the CITY's election and to bring attention to improper practices at the CITY.

51.   ALACHUA, WATSON and CALDERWOOD arrested and charged GRAPSKI with a crime for the purpose of retaliating against GRAPSKI for having exercised his First Amendment right to join in the suit against ALACHUA to contest Alachua's 2006 election on grounds of misconduct of its officers and officials.

52.   The charges against GRAPSKI (assigned case number 2006-CF-002034-A) were ultimately dismissed by the Judge on pretrial motions and terminated in GRAPSKI's favor on November 16, 2006.

**<u>FURTHER INTERFERENCE WITH PUBLIC RECORDS REQUESTS;</u>**
**<u>EXCLUSION FROM CITY HALL</u>**

53.   Notwithstanding his arrest, GRAPSKI continued with his campaign to obtain public records, to actively participate in Alachua politics, and to petition the CITY's representatives for needed reforms.

54.   The CITY and the individual Defendants responded with further efforts to sabotage GRAPSKI's activism and to infringe upon his constitutional rights and liberties.

55.   In December 2006, GRAPSKI went to the offices of City Attorney Marian B. Rush to make a request to inspect and copy public records of ALACHUA maintained

in her office. As City Attorney, Rush was the custodian of the public records which Plaintiff sought and was the proper official to receive GRAPSKI's request pursuant to Chapter 119 of the Florida Statutes.

56.     Marian Rush refused to accept GRAPSKI's public records request and issued a trespass warning through the Gainesville Police Department to prevent GRAPSKI from making public records requests through her office.

57.     Marian Rush sent the State Attorney for the Eighth Judicial Circuit a message stating that she wanted to see GRAPSKI jailed.

58.     On February 12, 2007 GRAPSKI went to ALACHUA's temporary City Hall[1] with citizens Tamara Robbins and Michael Canney for the purpose of inspecting public records and discussing ALACHUA's failure to comply with earlier public records requests.

59.     ALACHUA'S record custodian, Alan Henderson, refused to provide GRAPSKI the requested public records. GRAPSKI then requested that WATSON assist him in obtaining the records.

60.     WATSON refused to assist GRAPSKI in obtaining access to public records and directed GRAPSKI to leave the City Hall.

61.     WATSON had no reason and no legal basis to direct GRAPSKI to leave the City Hall.

_____

[1] The "temporary" City Hall was utilized by the CITY while its permanent facilities were being renovated. During the renovations, the CITY conducted all of its business from the temporary City Hall and those facilities were fully accessible to and by members of the public.

62.     WATSON instructed Chief JERNIGAN to require GRAPSKI to leave the premises.

63.     WATSON made the decision to eject GRAPSKI from City Hall while acting as ALACHUA's City Manager.  As City Manager, WATSON had the authority to make this decision on behalf of ALACHUA and he made the decision as the final decision making authority for the CITY.

64.     JERNIGAN, acting on WATSON's instructions, directed Alachua police officer Smith to issue GRAPSKI a written trespass warning.

65.     WATSON, ALACHUA and its officers and agents excluded GRAPSKI from the premises of ALACHUA's temporary City Hall without probable cause and for improper purposes.

66.     No reasonable police officer and no reasonable City Manager could have believed that there was any probable cause or other basis under law to exclude GRAPSKI from City Hall or to issue a trespass notice against him.

67.     WATSON, JERNIGAN and ALACHUA specifically intended to interfere with GRAPSKI's constitutional rights to inspect ALACHUA's public records; to instruct his representatives and to petition for redress of grievances guaranteed by Article I, §5 Florida Constitution; to petition for redress of grievances guaranteed by the First and Fourteenth Amendments to the United States Constitution; to retaliate against him for having exercised his First Amendment right to join in the suit against ALACHUA to contest Alachua's 2006 election; and to retaliate against him for having prevailed in case number 2006-CF-002034-A they had commenced against him.

68.     GRAPSKI's inability to return to ALACHUA's City Hall deprived him of

rights guaranteed by the Florida and United States Constitution to inspect ALACHUA's public records, to petition government for redress of grievances and to instruct his representatives.

## February 12, 2007 Arrest at City Commission Meeting

69.     At approximately 7:00 P.M. on February 12, 2007, GRAPSKI went to the elementary school in the City of Alachua where the ALACHUA's City Commission had convened in a regular public meeting.

70.     This is a different premises from the site of ALACHUA's temporary City Hall designated in the trespass warning referred to hereinabove.

71.     As a citizen and elector, GRAPSKI had a constitutional right guaranteed by Article I §24 Florida Constitution and the First Amendment to the United States Constitution to attend ALACHUA's City Commission meeting.

72.     As a citizen and elector GRAPSKI had a constitutional right to attend ALACHUA's city commission meeting to instruct his representatives and to seek redress of grievances guaranteed by Article I §5 Florida Constitution and by the First and Fourteenth Amendments to the United States Constitution.

73.     During the period of the meeting allocated for citizen comment, GRAPSKI addressed ALACHUA's City Commission about the ongoing refusal of ALACHUA's employees and officials to respond to his public records requests and about the then-pending law suit challenging Alachua's 2006 election.

74.     GRAPSKI handed CALDERWOOD, WATSON and City Attorney Rush a copy of a letter pertaining to the requests he had made to ALACHUA's officials for public records.

75.     Mayor CALDERWOOD admonished GRAPSKI with what she referred to as a "final warning" for being "disruptive."

76.     GRAPSKI returned to his seat in the front row of the public audience and remained in his seat at all times material hereto.

77.     Persons in the audience sitting behind GRAPSKI made comments to him and about him.

78.     GRAPSKI turned in his chair without arising and in a soft voice offered to hand the persons sitting behind him a copy of the letter he had provided ALACHUA's officials to permit these persons to review it for themselves.

79.     These persons indicated they did not wish to review the documents GRAPSKI proffered to them.

80.     Without more, GRAPSKI retained the document and silently returned his attention to the podium.

81.     GRAPSKI did not rise from his seat, did not raise his voice, did not interfere with or disrupt any speaker, and did not otherwise disturb the meeting.

82.     As GRAPSKI was addressing the individuals sitting behind him, other members of the audience were also speaking to one another. GRAPSKI's actions, attitude and speaking voice were no different than any other member of the audience attending the meeting.

83.     Without provocation or probable cause, Mayor CALDERWOOD summarily singled out GRAPSKI and accused him of disrupting the meeting.

84.     Mayor CALDERWOOD ordered Chief of Police JERNIGAN to make GRAPSKI leave the meeting.

85.     GRAPSKI had a right to attend the meeting guaranteed by Article 1 §§5 and 24 Florida Constitution, and the First and Fourteenth Amendments to the United States Constitution, and Mayor CALDERWOOD had no reason, justification or probable cause to remove him.

86.     Calderwood's order to have GRAPSKI removed from the ALACHUA Commission meeting was void and invalid when issued by the CITY as a violation of Plaintiff's constitutional right to petition the government for redress of grievances.

87.     GRAPSKI retained his seat.

88.     Mayor CALDERWOOD again directed Chief JERNIGAN to force GRAPSKI to leave the meeting.

89.     As Mayor, CALDERWOOD had the authority to make this decision on behalf of ALACHUA and she made the decision to have GRAPSKI removed from the meeting as the final decision-making authority for the CITY.

90.     GRAPSKI maintained his seat and voluntarily and peaceably held up his hands together so that the police could seize them if they chose to do so.

91.     Chief JERNIGAN placed handcuffs on GRAPSKI's upheld hands and ordered two of ALACHUA's police officers to remove him from the meeting.

92.     ALACHUA's police officers physically removed GRAPSKI from the building.

93.     WATSON stepped down from the dais and, as ALACHUA's Police Commissioner and City Manager, oversaw Chief JERNIGAN and his officers as they physically removed GRAPSKI from the meeting.

94.     JERNIGAN arrested GRAPSKI and charged him with trespass after

warning, disorderly conduct, resisting arrest without violence, and resisting arrest with violence.

95.     GRAPSKI's arrest on February 12, 2007 was entirely pretextual and without probable cause. The arrest was an intentional and calculated action to harass Plaintiff and to punish him for the exercise of his constitutional rights.

96.     No reasonable police officer or City official could have believed that there was any probable cause or other basis under law to arrest GRAPSKI for the perfectly legal act of attending and participating in a public hearing before a city commission.

97.     There was no probable cause to arrest GRAPSKI's for any crime. The arrest was effected with malice in an effort to stifle Plaintiff's speech and to interfere with the exercise of his constitutional rights, all in furtherance of the CITY's policy to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests, harassment and public ridicule.

98.     GRAPSKI remained incarcerated in jail overnight until about 3:00 P.M. on February 13, 2007.

99.     WATSON, acting on behalf of ALACHUA, directed JERNIGAN to lobby the State Attorney and the Alachua County Sheriff in an effort to convince them to prosecute GRAPSKI in connection with his February 12, 2007 arrest. In doing so, the CITY, JERNIGAN and WATSON specifically intended to interfere with GRAPSKI's constitutional rights to attend ALACHUA City Commission meetings; to inspect ALACHUA's public records; to instruct his representatives and to petition for redress of grievances guaranteed by Article I §5 Florida Constitution; to petition for redress of grievances guaranteed by the First and Fourteenth Amendments to the United States

Constitution; and further intended to retaliate against GRAPSKI for having exercised his First Amendment right to join in the suit against ALACHUA to contest Alachua's 2006 election; and to retaliate against him for having prevailed in case number 2006-CF-002034-A they had commenced against him.

100.    By letter dated March 1, 2007 JERNIGAN, acting for ALACHUA, provided State Attorney Bill Cervone a portfolio of several hundred pages outlining occasions in which GRAPSKI and Michael Canney (a party to the election law suit against ALACHUA) had attempted to obtain public records from ALACHUA and its employees and officials.

101.    By letter of March 1, 2007 JERNIGAN, acting for ALACHUA, provided the Sheriff of Alachua County a portfolio of several hundred pages outlining occasions in which GRAPSKI and Michael Canney had attempted to obtain public records from ALACHUA and its employees and officials.

102.    The State Attorney filed no information against GRAPSKI arising from the February 12, 2007 charges of trespass, disruption and resisting arrest, and the initiated prosecution against GRAPSKI terminated in his favor.

## Second Removal from City Commission Meeting

103.    On the evening of Monday, August 6, 2007, GRAPSKI attended ALACHUA's City Commission meeting, intending to address them concerning his ongoing efforts to secure public records and to advocate in favor of the abolishment of the consent agenda as a routine device to enact legislation (because use of the consent agenda reduces transparency in government).

104.    During the citizens' comment period, a local citizen, Robert Sharpe, told

ALACHUA's City Commission that GRAPSKI was guilty of passing bad checks and asked the Commission to prevent GRAPSKI from addressing the Commission.

105.    Sharpe's allegation was factually incorrect and baseless.

106.    After all other speakers had concluded and before the citizens' comments portion of the meeting was closed, GRAPSKI rose to make a point of order in the way of reply to Sharpe's false allegations against him.

107.    GRAPSKI was speaking during a time specifically reserved for citizen comment and had the right to address the Commission at that time. GRAPSKI did not act in a disruptive manner, did not threaten or disparage the Mayor, the Commission or any members of the audience, and he otherwise acted with appropriate decorum.

108.    GIB COERPER, who was then serving as Mayor of ALACHUA, peremptorily directed JERNIGAN to remove GRAPSKI from the meeting.

109.    As Mayor, COERPER had the authority to make this decision on behalf of ALACHUA and he made the decision to have GRAPSKI removed from the meeting as the final decision making authority for the CITY.

110.    GRAPSKI left the meeting under protest to avoid being arrested again.

111.    GRAPSKI had a right to attend the meeting guaranteed by Article 1 §§5 and 24 Florida Constitution and the First and Fourteenth Amendments to the United States Constitution and Mayor COERPER had no reason, justification or probable cause to remove him.

## COLOR OF STATE LAW

112.    As a political subdivision of the State of Florida, organized and operating under the laws of the State of Florida, ALACHUA and its agents, including WATSON,

CALDERWOOD, JERNIGAN, and COERPER, were, and are, acting under color of state law and authority.

113.    The actions and policies of ALACHUA, WATSON, CALDERWOOD, JERNIGAN and COERPER have deprived and will continue to deprive Plaintiff of rights guaranteed and protected by the First, Fourth and Fourteenth Amendments to the United States Constitution.

114.    The several arrests of the Plaintiff, and his repeated removals from public meetings and the halls of Government, are not isolated events but are part of an intentional and calculated campaign to deprive Plaintiff of his constitutional rights.

115.    WATSON, CALDERWOOD, JERNIGAN and COERPER were aware at all times of the CITY policy to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests and public ridicule.

116.    WATSON, CALDERWOOD, JERNIGAN and COERPER, while acting in their capacity as officers, employees and agents of the CITY OF ALACHUA conspired among themselves to bring about the repeated arrest of the Plaintiff and his exclusion from public meetings to punish him for his political activities and for his efforts to seek relief through the Courts of this State.

117.    Defendants have also used physical force and intimidation to literally beat Plaintiff into submission. Plaintiff has been physically assaulted - and even threatened with a Taser - for passive and lawful resistance to false and pretextual criminal charges.

118.    The crimes of which Plaintiff has been accused are entirely pretextual and the Defendants knew that there was no basis in law or fact to arrest and charge Plaintiff with any crime.

119.     The arrests and prosecutions complained of in this litigation have all been resolved in Plaintiff's favor.

120.     No reasonable public official could have believed that there was any basis under the law to arrest Plaintiff in these circumstances or to prosecute him on the pretextual charges asserted, to force his removal from public meetings or to issue trespass notices barring him from accessing City Hall.

## DAMAGES AND ATTORNEY'S FEES

121.     As a direct and proximate result of Defendants' unlawful acts, GRAPSKI has suffered the loss of rights guaranteed to him under the First, Fourth and Fourteenth Amendments to the United States Constitution.

122.     Plaintiff's Fourth Amendment rights were violated by the unconstitutional seizure of his person and property, his unlawful arrest and detention, and the malicious prosecution of false criminal charges.

123.     Plaintiff has been deprived of his First Amendment right to engage in free expression and to petition the government for redress of his grievances.

124.     In addition to the loss of his constitutional rights, Plaintiff experienced physical and emotional injuries, pain and discomfort, embarrassment and humiliation, psychological harm and monetary losses.

125.     Plaintiff also suffered injury to his reputation due to the concerted effort by the CITY and its officers, employees and agents, to leak false and defamatory information about him, to publicize the several false arrests of the Plaintiff and to criticize him publicly for his advocacy of constitutional rights and the right of the public to participate in government.

126.     The arrest, incarceration and prosecution of GRAPSKI also forced him to withdraw his candidacy from the election for State Representative and disrupted his pursuit of an advanced degree at the University of Florida.

127.     The individual Defendants engaged in a concerted campaign to deprive Plaintiff of his First Amendment rights in violation of the United States Constitution and to subject him to physical assault and emotional trauma through repeated arrests without probable cause or even a reasonable belief that a crime had been committed. Plaintiff's right to participate as a citizen in the political process, to air his political views, to seek redress of grievances and to otherwise engage in his rights as a citizen of this democracy are basic rights guaranteed by the Constitution and long recognized in our jurisprudence. Defendants' actions in violating Plaintiff's well-established rights are completely unacceptable in a constitutional republic and should subject the individual Defendants to punitive damages.

128.     Plaintiff has retained JOSEPH W. LITTLE and GARY S. EDINGER as his attorneys to represent them in this action and has agreed to pay them a reasonable fee, which fee Defendants must pay pursuant to 42 U.S.C. §1988.

## COUNT I
### (Right to Free Speech – Federal First Amendment)

129.     Plaintiff realleges the allegations set forth in paragraphs 1 through 128, and incorporates those allegations in this Count by reference.

130.     This is an action for damages against Defendants CITY OF ALACHUA, CLOVIS WATSON, JR., JEAN CALDERWOOD, ROBERT E. JERNIGAN, and GIB COERPER, arising from their repeated arrests of the Plaintiff and other efforts to thwart

his political activities in violation of Plaintiff's right of free speech protected by the First and Fourteenth Amendments

131.    This Court is authorized to award Plaintiff damages for infringement of his constitutional rights pursuant to 42 U.S.C. §1983.

132.    The First Amendment to the United States Constitution states that "Congress shall make no law… abridging the freedom of speech…"

133.    A continuing controversy has arisen between the parties concerning Plaintiff's rights to free speech on matters of public, political and individual concern.

134.    Plaintiff has been repeatedly arrested by the Defendants when attempting to review public records and when speaking before the ALACHUA City Commission.

135.    Plaintiff maintains that his arrests were and are unlawful and were undertaken without probable cause or reasonable belief that he had committed any crime; all such charges being pretextual and in furtherance of the Defendants' efforts to silence and intimidate the Plaintiff and to deny him the ability to speak freely.

136.    Likewise the repeated removal of the Plaintiff from City Commission meetings is unlawful and in furtherance of the Defendants' efforts to silence and intimidate the Plaintiff and to deny him the ability to speak freely.

137.    The several arrests, prosecutions, trespasses, and involuntary removals complained of herein are not isolated events, but were part of a larger campaign by which ALACHUA and its officers, employees and agents harassed, intimidated and physically battered Plaintiff, all in an effort to disrupt his speech and political activities, to violate his constitutional rights and to cause him personal pain, suffering and damages.

138.    The violation of Plaintiff's First Amendment rights was intentional,

malicious and carried out with complete disregard for the Plaintiff's constitutional rights.

139.    Plaintiff has suffered damages as a result of the violation of his constitutional rights.

        **WHEREFORE**, Plaintiff prays for the following relief:

        A.      That this Court take jurisdiction over the parties and this cause;

        B.      That this Court award GRAPSKI compensatory damages against CITY OF ALACHUA, CLOVIS WATSON, JR., JEAN CALDERWOOD, ROBERT E. JERNIGAN, and GIB COERPER for infringement of his constitutional rights pursuant to 42 U.S.C. §1983, and for injury to his person.

        C.      That this Court award Plaintiff punitive damages against Defendants CLOVIS WATSON, JR., JEAN CALDERWOOD, ROBERT E. JERNIGAN, and GIB COERPER, individually, to punish those individual Defendants for their unlawful actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

        D.      That this Court award Plaintiff his recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988, against all Defendants.

        E.      That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT II
### (Right to Petition – Federal First Amendment)

140.    Plaintiff realleges the allegations set forth in paragraphs 1 through 128, and incorporates those allegations in this Count by reference.

141.    This is an action for damages against Defendants CITY OF ALACHUA,

CLOVIS WATSON, JR., JEAN CALDERWOOD, ROBERT E. JERNIGAN, and GIB
COERPER, arising from their repeated arrests of the Plaintiff and other efforts to thwart
his political activities in violation of Plaintiff's right to petition government for the
redress of grievances protected by the First and Fourteenth Amendments

142.    This Court is authorized to award Plaintiff damages for infringement of
his constitutional rights pursuant to 42 U.S.C. §1983.

143.    The First Amendment to the United States Constitution guarantees to the
Plaintiff the right "to petition the Government for a redress of grievances".

144.    A continuing controversy has arisen between the parties concerning
Plaintiff's rights to petition the government on matters of public, political and individual
concern.

145.    Plaintiff has been repeatedly arrested by the Defendants when attempting
to review public records and when speaking before the ALACHUA City Commission.

146.    Plaintiff maintains that his arrests were and are unlawful and were
undertaken without probable cause or reasonable belief to believe that he had committed
any crime; all such charges being pretextual and in furtherance of the Defendants' efforts
to silence and intimidate the Plaintiff and to physically deny him the ability to petition the
government for redress of his grievances.

147.    Likewise the repeated removal of the Plaintiff from City Commission
meetings is unlawful and in furtherance of the Defendants' efforts to silence and
intimidate the Plaintiff and to deny him the ability to petition the government for redress
of his grievances.

148.    The several arrests, prosecutions, trespasses, and involuntary removals

complained of herein are not isolated events, but were part of a larger campaign by which ALACHUA and its officers, employees and agents harassed, intimidated and physically battered Plaintiff, all in an effort to disrupt his speech and political activities, to violate his constitutional rights and to cause him personal pain, suffering and damages.

149. The violation of Plaintiff's First Amendment rights was intentional, malicious and carried out with complete disregard for the Plaintiff's constitutional rights.

150. Plaintiff has suffered damages as a result of the violation of his constitutional rights.

151. Plaintiff has a right to have this Court declare his rights under the First, and Fourteenth Amendments as those rights are infringed upon by the Defendants' actions, policies and procedures.

**WHEREFORE**, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That the Court award GRAPSKI damages for the infringement of his First Amendment right to petition the government for redress of grievances, and for injuries to his person, arising from the malicious prosecution which followed his arrest of May 1, 2006 (terminating in GRAPSKI's favor on November 16, 2006);

C. That the Court award GRAPSKI's damages for the infringement of his First Amendment right to petition the government for redress of grievances, and for injuries to his person, arising from the false arrest on February 12, 2007, and the subsequent effort to prosecute him on pretextual charges, all of which terminated in GRAPSKI's favor.

D. That this Court award Plaintiff compensatory damages against CITY OF

ALACHUA, CLOVIS WATSON, JR., JEAN CALDERWOOD, ROBERT E. JERNIGAN, and GIB COERPER for infringement of his constitutional rights pursuant to 42 U.S.C. §1983, and for injury to his person.

E.      That this Court award Plaintiff punitive damages against Defendants CLOVIS WATSON, JR., JEAN CALDERWOOD, ROBERT E. JERNIGAN, and GIB COERPER, individually, to punish those individual Defendants for their unlawful actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

F.      That this Court award Plaintiff his recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988, against all Defendants.

G.      That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT III
### (Federal Equal Protection – Class of One)

152.     Plaintiff realleges the allegations set forth in paragraphs 1 through 128, and incorporates those allegations in this Count by reference.

153.     This is an action for damages against Defendants CITY OF ALACHUA, CLOVIS WATSON, JR., JEAN CALDERWOOD, ROBERT E. JERNIGAN, and GIB COERPER, arising from their selective enforcement of the laws against GRAPSKI in an effort to single out and punish him for the exercise of his constitutional rights, all in violation of Plaintiff's right of Equal Protection guaranteed by the Fourteenth Amendment.

154.     This Court is authorized to award Plaintiff damages for infringement of

his constitutional rights pursuant to 42 U.S.C. §1983.

155.    The Equal Protection Clause of the Fourteenth Amendment prohibits government from discriminating against similarly situated individuals without a rational and neutral basis for doing so.

156.    The Defendants' campaign of arrests and harassment intentionally singled out Plaintiff for selective enforcement, inequitable treatment and purposeful discrimination through the unequal, unjust and oppressive administration of the City's ordinances and through illegal police action.

157.    Defendants have engaged in a course of conduct that treats Plaintiff disparately from other similarly situated citizens.

158.    On information and belief, GRAPSKI alleges that no other citizens have been forcibly removed from an ALACHUA City Commission meeting in the manner in which GRAPSKI was removed, nor has any other citizen been arrested for disrupting a meeting of the City Commission.

159.    On information and belief, GRAPSKI alleges that no other citizens have been issued a trespass notice barring them from the ALACHUA City Hall.

160.    One of those trespass notices (issued on February 12, 2007) was issued to Plaintiff while in the company of his compatriots who were seeking the same public records as Plaintiff. The other citizens were not issued trespass notices even though they were similarly situated to the Plaintiff and their demands and behavior were indistinguishable from those of Plaintiff.

161.    Plaintiff was singled out for selective and unequal enforcement and suffered a unique disability imposed upon him and no other citizen of ALACHUA.

162.    There exists no rational basis for treating Plaintiff in a disparate fashion as compared to every other citizen in the community.

163.    The disparate treatment of the Plaintiff was motivated by an invidious purpose; to-wit: to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests, harassment and public ridicule, all in an effort to dissuade him from pursuing public records requests, from seeking political reforms, from engaging in political activities and as punishment for having exercised those fundamental constitutional rights.

164.    The disparate treatment of the Plaintiff was further motivated by Defendants' desire to retaliate against Plaintiff for having sued the CITY and because Plaintiff actively defended against each of the false arrests and prosecutions undertaken by the CITY and the individual Defendants.

165.    Defendants' reliance on state law and authority as a basis for their actions was entirely pretextual. Defendants knew that there was no lawful basis for their actions and no probable cause to arrest or prosecute Plaintiff for any of the actions complained of herein. The Defendants' actions were motivated entirely by an intent to harass Plaintiff and deny him the equal protection of the laws.

166.    The Defendants' actions and policies, as applied to Plaintiff, violate the Equal Protection Clause of the Fourteenth Amendment.

**WHEREFORE**, Plaintiff prays for the following relief:

A.    That this Court take jurisdiction over the parties and this cause;

B.    That this Court award Plaintiff compensatory damages against CITY OF ALACHUA, CLOVIS WATSON, JR., JEAN CALDERWOOD, ROBERT E.

JERNIGAN, and GIB COERPER for infringement of his constitutional rights pursuant to 42 U.S.C. §1983, and for injury to his person.

C.      That this Court award Plaintiff punitive damages against Defendants CLOVIS WATSON, JR., JEAN CALDERWOOD, ROBERT E. JERNIGAN, and GIB COERPER, individually, to punish those individual Defendants for their unlawful actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

D.      That this Court award Plaintiff his recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988, against all Defendants.

E.      That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT IV

### (Federal Fourth Amendment Violation - February 12, 2007 Arrest)

167.     Plaintiff realleges the allegations set forth in paragraphs 1 through 5, 10 through 34, 69 through 102 and 112 through 128, and incorporates those allegations in this Count by reference.

168.    This is an action for damages against Defendants CITY OF ALACHUA, CLOVIS WATSON, JR., JEAN CALDERWOOD and ROBERT E. JERNIGAN, arising from their forced removal and arrest of the Plaintiff on February 12, 2007 in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

169.    This Court is authorized to award Plaintiff damages for infringement of his constitutional rights pursuant to 42 U.S.C. §1983.

170.    The Fourth Amendment to the United States Constitution provides that

"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue but upon probable cause…".

171.   Plaintiff had a constitutional right to attend the ALACHUA City Commission meeting on February 12, 2007 and further had the right to address the City Commission during the time set aside for citizen comment. At the conclusion of his remarks to the ALACHUA City Commission, Plaintiff had the right to remain in the audience to hear the comments of other citizens and to observe the actions and decisions of the ALACHUA City Commission.

172.   CALDERWOOD had no legal basis to order GRAPSKI's removal from the ALACHUA City Commission meeting on February 12, 2007 and WATSON and JERNIGAN had no legal basis to arrest GRAPSKI.

173.   No probable cause existed to detain or arrest GRAPSKI and no reasonable official could have believed that GRAPSKI was committing a crime by attending and participating in the February 12, 2007 ALACHUA City Commission meeting. The arrest was objectively unreasonable and without foundation in the law.

174.   Defendants knew that there was no lawful basis to arrest GRAPSKI or to exclude Plaintiff from the February 12, 2007 ALACHUA City Commission meeting.

175.   Defendants intentionally violated Plaintiff's Fourth Amendment right to be free of unreasonable seizures by arresting Plaintiff and excluding him from the February 12, 2007 ALACHUA City Commission meeting.

176.   Defendants further violated Plaintiff's Fourth Amendment rights by arranging for his incarceration in jail, by filing false criminal charges against him and by

actively encouraging and participating in the wrongful prosecution of Plaintiff.

177.    No reasonable police officer could have believed that probable cause existed to arrest and remove GRAPSKI or initiate a prosecution against him on these charges.

178.    GRAPSKI's arrest, removal and prosecution were malicious and part of a larger campaign to stifle Plaintiff's speech and to interfere with the exercise of his constitutional rights, all in furtherance of the CITY's policy to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests, harassment and public ridicule.

179.    The individual Defendants CLOVIS WATSON, JR., JEAN CALDERWOOD and ROBERT E. JERNIGAN violated Plaintiff's Fourth Amendment rights as well as the clearly established law in this Circuit.

180.    GRAPSKI suffered damages as a direct result of the unconstitutional arrest, battery and prosecution by the Defendants, CLOVIS WATSON, JR., JEAN CALDERWOOD and ROBERT E. JERNIGAN. Plaintiff's damages consist of infringement upon his Fourth Amendment rights as well as physical and emotional injuries, psychological harm, and humiliation.

**WHEREFORE**, Plaintiff prays for the following relief:

A.      That this Court take jurisdiction over the parties and this cause;

B.      That this Court award Plaintiff compensatory damages against CITY OF ALACHUA, CLOVIS WATSON, JR., JEAN CALDERWOOD and ROBERT E. JERNIGAN for infringement of his constitutional rights pursuant to 42 U.S.C. §1983, and for injury to his person.

C.      That this Court award Plaintiff punitive damages against Defendants CLOVIS WATSON, JR., JEAN CALDERWOOD and ROBERT E. JERNIGAN, individually, to punish those individual Defendants for their unlawful actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

D.      That this Court award Plaintiff his recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988, against all Defendants.

E.      That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT V

### (Federal Fourth Amendment Violation - August 13, 2007 Arrest)

181.    Plaintiff realleges the allegations set forth in paragraphs 1 through 5, 10 through 34, and 112 through 128, and incorporates those allegations in this Count by reference.

182.    This is an action for damages against Defendants CITY OF ALACHUA, ROBERT E. JERNIGAN and PATRICK BARCIA, arising from the forced removal and arrest of the Plaintiff on August 13, 2007 in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

183.    This Court is authorized to award Plaintiff damages for infringement of his constitutional rights pursuant to 42 U.S.C. §1983.

184.    The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue but upon probable cause…".

185.    As part of the CITY's campaign to harass and embarrass GRAPSKI, JERNIGAN undertook an unwarranted and intrusive investigation of the Plaintiff concerning the negotiation of a valid check. JERNIGAN's investigation followed on the heels of two earlier police investigations which had both concluded that Plaintiff had committed no crime. The facts surrounding JERNIGAN's pretextual investigation may be summarized as follows:

A.    On Sunday August 5, 2007, GRAPSKI bought gasoline at a Kangaroo gasoline and convenience store in Alachua. GRAPSKI paid by check (a nominal amount totaling slightly over forty dollars).

B.    Kangaroo's electronic service did not inform Kangaroo that GRAPSKI had sufficient funds in his account because the deposit was made over the weekend and had not yet been posted. The Kangaroo operator filed a complaint with the CITY.

C.    Nevertheless, GRAPSKI *did* have sufficient funds in his account. The Kangaroo station operator deposited GRAPSKI's check and GRAPSKI's bank paid it (that is the check was never returned or dishonored, but was paid in the ordinary course).

D.    An Alachua police officer investigated and filed APD Offense Event Report 2007008289, which concluded: "No charges are being filed and there is no further information to report."

E.    A second Alachua officer investigated the Kangaroo station incident and made a second report, which concluded: "This incident was a follow up to CR#2007008223. No further action shall be taken by this officer regarding this incident."

F.    Despite the previous two police investigations which had concluded that GRAPSKI had not issued a bad check and had not committed any crime, Chief

JERNIGAN conducted a third investigation of this $40 check incident.

G.      JERNIGAN undertook this investigation solely to uncover private information regarding GRAPSKI in an effort to embarrass and discredit GRAPSKI in the public eye.

H.      On August 8, 2007, JERNIGAN obtained GRAPSKI's check from the Kangaroo station without a warrant and without a subpoena.

I.      JERNIGAN telephoned the Millennium Bank in Alachua, spoke to a bank employee, identified himself as a police officer, and without a warrant and without a subpoena, obtained personal financial information concerning GRAPSKI's bank account.

J.      Despite documentation to the contrary, Chief JERNIGAN filed report CR#2007008223 in which he stated that GRAPSKI's check was not good on August 5, 2007. However, JERNIGAN's report CR#2007008223 also concluded: "This case is closed."

K.      The details of the investigation where leaked by the CITY to CALDERWOOD's husband who posted information about the investigation – much of it false and defamatory - over the Internet. The leaked information included information JERNIGAN obtained from his unauthorized contacts with Millennium Bank.

186.    GRAPSKI was alarmed and upset both by the CITY's access to his personal financial information and by the posting of false and defamatory materials on the Internet incorporating information leaked by CITY personnel.

187.    On Monday morning, August 13, 2007, GRAPSKI went to the ALACHUA police station at about 9:30 A.M. to obtain the police reports pertaining to the Kangaroo incident. This was the first time GRAPSKI learned of the third

investigation conducted by JERNIGAN after the formal police investigations had already been concluded.

188.    At about 10:30 A.M. on August 13, 2007, GRAPSKI returned to the ALACHUA police station to file an official complaint against the ALACHUA police department and Chief JERNIGAN regarding the unauthorized access to and use of his personal financial information.

189.    GRAPSKI entered the public lobby and requested to speak with JERNIGAN to make a complaint.

190.    JERNIGAN would not speak with GRAPSKI so GRAPSKI requested that he be permitted to speak to the second in command for the purpose to making a complaint against JERNIGAN and others involved in wrongfully accessing his bank records.

191.    GRAPSKI was told to wait in the lobby and did so for about 20 minutes.

192.    GRAPSKI sat quietly and did nothing to disturb the business of the police headquarters or the members of the public present.

193.    In the meantime, JERNIGAN informed WATSON that GRAPSKI had come to the police station to make a complaint and requested instructions. On information and belief, GRAPSKI alleges that WATSON instructed JERNIGAN to refuse GRAPSKI's request to file a complaint and directed JERNIGAN to remove GRAPSKI from the premises.

194.    JERNIGAN then appeared in the public lobby and asked GRAPSKI to accompany him outside the building onto the sidewalk in front of the entrance into the public lobby.

195.    When outside on the sidewalk in front of the public lobby, GRAPSKI requested JERNIGAN to accept an official complaint against JERNIGAN or the ALACHUA personnel responsible for obtaining unauthorized information from Millennium Bank.

196.    JERNIGAN refused to accept GRAPSKI's complaint about himself or anyone else and refused to let him make a written complaint with any other ALACHUA employee.

197.    GRAPSKI continued to insist that he had a right to file a complaint.

198.    After again consulting with WATSON, JERNIGAN refused to accept GRAPSKI's complaint and advised GRAPSKI that no official with the CITY would accept a complaint from him.

199.    Chief JERNIGAN re-entered the public lobby of the police department building and physically locked GRAPSKI out of the public building.

200.    All of these events occurred during normal business hours and the building was otherwise open to the public for business.

201.    GRAPSKI knocked on the door and again asked to be permitted to file a complaint against JERNIGAN and others involved.

202.    JERNIGAN and Alachua police officer BARCIA came out of the public lobby onto the sidewalk where GRAPSKI was standing.

203.    GRAPSKI again asked to file a complaint against JERNIGAN and others involved.

204.    JERNIGAN again refused.

205.     BARCIA asked JERNIGAN, "Is he under arrest yet?"

206.    GRAPSKI turned to JERNIGAN, asked if he were under arrest, and held his hands together offering to be handcuffed.

207.    GRAPSKI made no threatening or aggressive act of any kind whatsoever.

208.    JERNIGAN, BARCIA and another ALACHUA officer then arrested GRAPSKI on charges of trespassing. During the course of the arrest, JERNIGAN and BARCIA intentionally seized, attacked and battered GRAPSKI without his consent and without probable cause.

209.    JERNIGAN and BARCIA knew that GRAPSKI had committed no crime and that no reasonable basis existed to believe that he had committed a crime.

210.    JERNIGAN and BARCIA had no valid reason to arrest GRAPSKI on a trespass charge and no reason to batter him.

211.    GRAPSKI's arrest on August 13, 2007 on trespass charges was entirely pretextual and without probable cause. The arrest was an intentional and calculated action to harass Plaintiff and to punish him for the exercise of his constitutional rights.

212.    No reasonable police officer could have believed that there was any probable cause or other basis under law to arrest GRAPSKI for the perfectly legal act of attempting to file a complaint against a public official as part of an effort to petition government for redress of grievances.

213.    As Chief of Police, JERNIGAN had the authority to make the decision to arrest GRAPSKI and to take him physically into custody, and he made the decision to arrest GRAPSKI and take him into custody as the final decision making authority for the CITY.

214.    This arrest made by ALACHUA,  JERNIGAN and the City's other agents,

officers and employees, was made without probable cause and for improper purposes. The arrest was objectively unreasonable and without foundation in the law.

215.    JERNIGAN and BARCIA arrested and charged GRAPSKI with a crime with the specific intent and purpose of interfering with GRAPSKI's constitutional rights to instruct his representatives and to petition for redress of grievances guaranteed by Article I §5 Florida Constitution; to petition for redress of grievances guaranteed by the First and Fourteenth Amendments to the United States Constitution; and further intended to retaliate against him for having exercised his First Amendment right to join in the suit against ALACHUA to contest Alachua's 2006 election; to retaliate against him for having prevailed in case number 2006-CF-002034-A they had commenced against him; and to retaliate against GRAPSKI for trying to file a complaint against JERNIGAN and other officers of the CITY.

216.    Additional interactions occurred between GRAPSKI and the ALACHUA officers *following* his illegal arrest which ultimately resulted in GRAPSKI facing an additional charge of battery on a law enforcement officer (Lattimer). Those interactions, and the criminal charges flowing from them, are *not* the subject of this Amended Complaint.

217.    Immediately after his arrest, ALACHUA officers took GRAPSKI to a hospital emergency room for treatment for injuries he received as a result of the battery committed by JERNIGAN and BARCIA.

218.    ALACHUA officers then took GRAPSKI to the Alachua County jail and booked him into the jail on various charges arising out of the incident described in the preceding paragraphs (excluding, for purposes of this Amended Complaint, the battery

charge upon officer Lattimer).

219.    Ultimately, GRAPSKI was taken to the North Florida Regional Hospital in Gainesville for treatment of the injuries inflicted upon him stemming directly from his arrest and battery and proximately arising from his subsequent incarceration.

220.    GRAPSKI was near death and remained hospitalized under the guard of a correctional officer for several days.

221.    GRAPSKI was incarcerated for two weeks immediately after the arrest and, with some intervening periods of release, was subsequently incarcerated for 105 days, followed by additional sporadic days of incarceration.

222.    JERNIGAN and ALACHUA initiated a criminal prosecution against GRAPSKI by filling a complaint with the State Attorney of the Eighth Judicial Circuit charging GRAPSKI with trespass, resisting arrest with violence, battery on JERNIGAN, BARCIA, and on Alachua police officer Lattimer.

223.    JERNIGAN initiated this prosecution as ALACHUA's final decision maker and did so with WATSON's approval.

224.    Based upon ALACHUA and JERNIGAN's complaint against GRAPSKI, the State Attorney filed an information in case number 01-2007-CF-003672A charging GRAPSKI *inter alia* with trespass on land after warning, resisting an officer with violence, battery upon an officer (meaning JERNIGAN), battery on officer BARCIA, and battery upon officer Lattimer

225.    On November 13, 2009, a jury acquitted GRAPSKI of the charges of trespass on land after warning, resisting an officer with violence, and battery.

226.    ALACHUA and JERNIGAN's initiation of prosecution against GRAPSKI

on charges of trespass to land after warning, resisting an officer with violence, and battery upon JERNIGAN was done without probable cause and for an improper purpose. (the battery charge upon officer Lattimer is not the subject of this Amended Complaint).

227.   No reasonable police officer could have believed that probable cause existed to initiate a prosecution against GRAPSKI on these charges (excluding, for purposes of this Amended Complaint, the battery charge upon officer Lattimer). In particular, the initial basis for arrest – an alleged trespass after warning – was entirely pretextual and without legal foundation.

228.   GRAPSKI suffered damages as a direct result of his unconstitutional arrest, battery and prosecution of by the Defendants, ALACHUA, JERNIGAN and BARCIA. Plaintiff's damages consist of infringement upon his Fourth Amendment rights as well as physical and emotional injuries, psychological harm, and humiliation.

229.   Plaintiff's Fourth Amendment rights were violated by his unconstitutional arrest and detention and subsequent prosecution on charges related to the pretextual and unsubstantiated trespass and battery charges (excluding, for purposes of this Amended Complaint, the battery charge upon officer Lattimer).

**WHEREFORE**, Plaintiff prays for the following relief:

A.    That this Court take jurisdiction over the parties and this cause;

B.    That this Court award Plaintiff compensatory damages against CITY OF ALACHUA, ROBERT E. JERNIGAN, and PATRICK BARCIA for infringement of his constitutional rights pursuant to 42 U.S.C. §1983, and for injury to his person.

C.    That this Court award Plaintiff punitive damages against Defendants ROBERT E. JERNIGAN, and PATRICK BARCIA, individually, to punish those

individual Defendants for their unlawful actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

D.      That this Court award Plaintiff his recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988, against all Defendants.

E.      That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT VI

### (State Law Claim – Malicious Prosecution – 2006 Prosecution)

230.    Plaintiff realleges the allegations set forth in paragraphs 2, 6 through 55, and 114 through 127, and incorporates those allegations in this Count by reference.

231.    This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

232.    This is an action for damages against WATSON and JERNIGAN brought under the laws of the State of Florida and based on the malicious prosecution of Plaintiff.

233.    This claim for malicious prosecution is filed within the applicable statute of limitations. The right to maintain a suit for malicious prosecution arises upon termination of the prosecution favorably to the plaintiff. In this instance, the cause of action did not arise until the charges were dismissed against Plaintiff on November 16, 2006, and the four year statute of limitations does not run until November 16, 2010.

234.    WATSON and JERNIGAN knew at the time they made the decision to arrest GRAPSKI that there was no probable cause to arrest GRAPSKI for having recorded the conversation of April 28, 2006, or for any other reason.

235.    A reasonable police officer in similar circumstances could not have believed that Plaintiff committed a crime by recording his conversation with Watson on April 28, 2006.

236.    Defendants WATSON and JERNIGAN filed criminal charges against Plaintiff knowing at the time they did so that Plaintiff had not committed any crime.

237.    Defendants WATSON and JERNIGAN maliciously filed and pursued criminal charges against Plaintiff on charges he did not commit without probable cause and for the improper  purpose of interfering with his right of free speech and the right to petition government for redress of grievances guaranteed by the First and Fourteenth Amendments to the United States Constitution; and to retaliate against him for exercising his First Amendment right to join in the suit against ALACHUA to contest Alachua's 2006 election on grounds of misconduct of its officers and officials.

238.    Defendants acted intentionally and maliciously with the express intention of depriving Plaintiff of his freedom and of his civil liberties.

239.    The prosecution terminated in Plaintiff's favor on November 16, 2006.

240.    Plaintiff was detained and prosecuted against his will.

241.    Plaintiff has suffered damages as a direct and proximate result of the malicious prosecution on false charges, including loss of his freedom, physical discomfort, pain and suffering, fear of physical assault, humiliation and embarrassment and lost income.

**WHEREFORE**, Plaintiff prays for the following relief:

A.    That this Court take jurisdiction over the parties and this cause;

B.    That this Court award Plaintiff compensatory and punitive damages

against Defendants CLOVIS WATSON, JR.  and ROBERT E. JERNIGAN, individually, to punish those individual Defendants for their unlawful actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

C.      That this Court award Plaintiff his recoverable costs together with all other relief in law and in equity to which he may be entitled.

## COUNT VII

**(State Law Claim – Negligent Training / Supervision – 2006 Prosecution)**

242.     Plaintiff realleges the allegations set forth in paragraphs 2, 6 through 55, and 112 through 127, and incorporates those allegations in this Count by reference.

243.     This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

244.     This is an action for damages against CITY OF ALACHUA brought under the laws of the State of Florida for negligence in the training, supervision and instruction of its employees, WATSON and JERNIGAN.

245.     At all times material hereto, ALACHUA was the employer of WATSON and JERNIGAN.

246.     WATSON and JERNIGAN engineered the arrest and prosecution of Plaintiff on false charges of having recorded a conversation with WATSON on April 28, 2006.

247.     ALACHUA knew or should have known that GRAPSKI would be battered by the arresting officers as unwanted and unjustified physical contact was a

foreseeable consequence of the custodial arrest.

248.    WATSON and JERNIGAN filed charges against Plaintiff and actively assisted the State Attorney in his prosecution of Plaintiff on these false charges.

249.    WATSON and JERNIGAN regularly reported their efforts to prosecute Plaintiff to CALDERWOOD and other officials of the CITY OF ALACHUA.

250.    ALACHUA had actual knowledge of the actions that its employees had arrested GRAPSKI, had filed charges against him and had urged, encouraged and assisted his prosecution.

251.    ALACHUA knew or should have known that the charges against GRAPSKI were baseless and brought in a bad faith attempt to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests, harassment and public ridicule.

252.    ALACHUA knew or should have known that its employees (particularly WATSON and JERNIGAN) were engaged in the malicious prosecution of the Plaintiff in connection with his May 1, 2006 arrest.

253.    The CITY OF ALACHUA should have been aware that the charges against Plaintiff were baseless and the result of a malicious prosecution when Plaintiff filed his motion to dismiss and argued that motion to the presiding Judge in Case No.: 2006-CF-002034-A, on November 16, 2006.

254.    A reasonable governmental entity would have taken remedial action by immediately instructing its employees to withdraw the charges and notifying the State Attorney that the charges against GRAPSKI were baseless and should be dismissed.

255.    Rather than take any such remedial action, ALACHUA allowed its agents

to encourage and assist in GRAPSKI's prosecution.

256.   ALACHUA owed Plaintiff a duty of care to adequately train, instruct and supervise its police officers, including WATSON and JERNIGAN, in CITY policies and with respect to the application of state and local law, including the statutes governing the recording of conversations with consent.

257.   ALACHUA breached its duty to Plaintiff by failing to adequately train, instruct and supervise its employees, including WATSON and JERNIGAN.

258.   ALACHUA breached its duty to Plaintiff by failing to take any remedial action following actual and imputed knowledge of the ongoing malicious prosecution of the Plaintiff. That remedial action could have been taken as late as November 16, 2006, when Plaintiff was called upon to argue his motion to dismiss.

259.   Had WATSON and JERNIGAN been adequately trained, instructed and supervised, those officials would not have arrested Plaintiff, would not have charged Plaintiff and would not have encouraged and assisted in the prosecution of Plaintiff for a non-existent crime.

260.   Plaintiff suffered damages as a direct and proximate result of ALACHUA's failure to exercise reasonable supervision of its employees, including WATSON and JERNIGAN.

**WHEREFORE**, Plaintiff prays for the following relief:

A.   That this Court take jurisdiction over the parties and this cause;

B.   That this Court award Plaintiff money damages against ALACHUA pursuant to §768.28, Fla.Stat. to compensate Plaintiff for the injuries ALACHUA's negligence caused him to suffer.

C.     That this Court award Plaintiff his recoverable costs together with all other relief in law and in equity to which he may be entitled.

## COUNT VIII

### (State Law Claim - False Arrest – February 12, 2007)

261.     Plaintiff realleges the allegations set forth in paragraphs 2, 6 through 34, 69 through 102, and 111 through 127, and incorporates those allegations in this Count by reference.

262.     This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

263.     This is an action for damages against WATSON, CALDERWOOD and JERNIGAN brought under the laws of the State of Florida and based on the illegal arrest and detention of Plaintiff.

264.     Defendants did not have a warrant or Court order authorizing Plaintiff's arrest or detention on February 12, 2007.

265.     Defendants had no legal basis to physically detain and arrest the Plaintiff and Defendants knew that the detention and arrest was without legal basis.

266.     Defendants had no probable cause to believe that Plaintiff had committed any crime on February 12, 2007.

267.     A reasonable police officer in similar circumstances could not have believed that Plaintiff committed a crime or breached the peace at the February 12, 2007 ALACHUA Commission meeting.

268.     Defendants arrested Plaintiff because they disagreed with the content of

Plaintiff's speech, with his several suits against the CITY, and because of his political activism, and not because the Plaintiff was violating any law or otherwise breaching the peace.

269.   Defendants acted intentionally and maliciously with the express intention of depriving Plaintiff of his freedom and of his civil liberties.

270.   Plaintiff was detained and arrested against his will.

271.   Plaintiff has suffered damages as a direct and proximate result of his illegal arrest and detention, including loss of his freedom, physical discomfort, pain and suffering, fear of physical assault, humiliation and embarrassment.

**WHEREFORE**, Plaintiff prays for the following relief:

A.   That this Court take jurisdiction over the parties and this cause;

B.   That this Court award Plaintiff compensatory and punitive damages against Defendants CLOVIS WATSON, JR., JEAN CALDERWOOD and ROBERT E. JERNIGAN, individually, to punish those individual Defendants for their unlawful actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

C.   That this Court award Plaintiff his recoverable costs together with all other relief in law and in equity to which he may be entitled.

## COUNT IX

**(State Law Claim – Negligent Training / Supervision – February 12, 2007 Arrest)**

272.   Plaintiff realleges the allegations set forth in paragraphs 2, 6 through 34, 69 through 102, and 112 through 127, and incorporates those allegations in this Count by reference.

273.   This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

274.   This is an action for damages against CITY OF ALACHUA brought under the laws of the State of Florida for negligence in the training, instruction and supervision of its agents and employees, CALDERWOOD, WATSON and JERNIGAN.

275.   At all times material hereto, ALACHUA was the employer of WATSON and JERNIGAN.

276.   CALDERWOOD, WATSON and JERNIGAN engineered the arrest and prosecution of Plaintiff on false charges of trespassing at the City Commission meeting on February 12, 2007.

277.   ALACHUA knew or should have known that GRAPSKI would be battered by the arresting officers as unwanted and unjustified physical contact was a foreseeable consequence of the custodial arrest.

278.   A reasonable governmental entity would have taken remedial action by immediately intervening in the arrest and directing its officers to release GRAPSKI.

279.   WATSON and JERNIGAN filed charges against Plaintiff and actively assisted the State Attorney in his prosecution of Plaintiff on these false charges.

280.   WATSON and JERNIGAN regularly reported their efforts to prosecute Plaintiff to CALDERWOOD and other officials of the CITY OF ALACHUA.

281.   ALACHUA had actual knowledge that its employees had arrested GRAPSKI, had filed charges against him and had urged, encouraged and assisted his prosecution.

282.    ALACHUA knew or should have known that the charges against GRAPSKI were baseless and brought in a bad faith attempt to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests, harassment and public ridicule.

283.    ALACHUA knew or should have known that its agents and employees (particularly CALDERWOOD, WATSON and JERNIGAN) were engaged in the malicious prosecution of the Plaintiff in connection with his February 12, 2007 arrest.

284.    A reasonable governmental entity would have taken remedial action by immediately instructing its employees to withdraw the charges and notifying the State Attorney that the charges against GRAPSKI were baseless and should be dismissed.

285.    Rather than take any such remedial action, ALACHUA allowed its agents to encourage and assist in GRAPSKI's prosecution.

286.    ALACHUA owed Plaintiff a duty of care to adequately train, instruct and supervise its agents and police officers, including CALDERWOOD, WATSON and JERNIGAN, in CITY policies and with respect to the application of state and local law, including the statutes governing trespass and the right of citizens to speak to their elected representative on matters of public concern.

287.    ALACHUA breached its duty to Plaintiff by failing to adequately train, instruct and supervise its employees, including CALDERWOOD, WATSON and JERNIGAN.

288.    ALACHUA breached its duty to Plaintiff by failing to take any remedial action following actual and imputed knowledge of the ongoing malicious prosecution of the Plaintiff.

289.    Had CALDERWOOD, WATSON and JERNIGAN been adequately trained, instructed and supervised, those officials would not have arrested Plaintiff, would not have charged Plaintiff and would not have encouraged and assisted in the prosecution of Plaintiff for a non-existent crime.

290.    Plaintiff suffered damages as a direct and proximate result of ALACHUA's failure to exercise reasonable supervision of its agents and employees, including CALDERWOOD, WATSON and JERNIGAN.

**WHEREFORE**, Plaintiff prays for the following relief:

A.      That this Court take jurisdiction over the parties and this cause;

B.      That this Court award Plaintiff money damages against ALACHUA pursuant to §768.28, Fla.Stat. to compensate Plaintiff for the injuries ALACHUA's negligence caused him to suffer.

C.      That this Court award Plaintiff his recoverable costs together with all other relief in law and in equity to which he may be entitled.

## COUNT X

### (State Law Tort Claim – Battery - February 12, 2007)

291.    Plaintiff realleges the allegations set forth in paragraphs 2, 6 through 34, 69 through 102, and 112 through 127, and incorporates those allegations in this Count by reference.

292.    This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

293.    This is an action against JERNIGAN to recover damages for battery.

294.    While serving in his capacity as Chief of Police for the City of Alachua, JERNIGAN had offensive, non-consensual physical contact with Plaintiff.

295.    Specifically, JERNIGAN handcuffed the Plaintiff and assisted in dragging him from the County Commission meeting.

296.    JERNIGAN knew that there was no legal basis to touch Plaintiff or to physically remove his against his will from a public meeting in a public facility.

297.    JERNIGAN took these actions at the direction of the Mayor, CALDERWOOD, and under the supervision of the City Manager, WATSON.

298.    Other law enforcement officers employed by the CITY assisted JERNIGAN is dragging and carrying Plaintiff to the police station and, in the course of doing so, dropped him and threatened him with a Taser, all against Plaintiff's will and without his consent.

299.    Plaintiff's arrest was illegal and without probable cause; any contact with Plaintiff arising from the illegal detention and seizure of his person is likewise illegal and without justification.

300.    As a direct and proximate result of Defendants' physical assaults on Plaintiff, Plaintiff has suffered damages, including loss of his freedom, physical discomfort, pain and suffering, fear of physical assault, humiliation and embarrassment.

WHEREFORE, Plaintiff prays for the following relief:

A.    That this Court take jurisdiction over the parties and this cause.

B.    That this Court award Plaintiff compensatory and punitive damages against Defendant JERNIGAN, individually, to punish JERNIGAN for his unlawful

actions and to deter JERNIGAN and others from engaging in the same or similar acts in the future.

C.      That this Court award Plaintiff his recoverable costs together with all other relief in law and in equity to which he may be entitled.

## COUNT XI

**(State Law Claim – Malicious Prosecution – February 12, 2007)**

301.    Plaintiff realleges the allegations set forth in paragraphs 2, 6 through 34, 69 through 102, and 112 through 127, and incorporates those allegations in this Count by reference.

302.    This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

303.    This is an action for damages against WATSON, CALDERWOOD and JERNIGAN brought under the laws of the State of Florida and based on the malicious prosecution of Plaintiff.

304.    Defendants had no probable cause to believe that Plaintiff had committed any crime on February 12, 2007.

305.    A reasonable official in similar circumstances could not have believed that Plaintiff committed a crime or breached the peace at the February 12, 2007 Alachua Commission meeting.

306.    Defendants filed criminal charges against Plaintiff knowing at the time they did so that Plaintiff had not committed any crime.

307.    Once film of the incident was reviewed, it became obvious that Plaintiff

had committed no crime and that there was no basis to prosecute Plaintiff on any charges. Despite this knowledge, the Defendants refused to drop the charges and persisted in their efforts to have Plaintiff prosecuted.

308.   The prosecution was terminated in GRAPSKI's favor.

309.   Defendants maliciously filed and pursued criminal charges against Plaintiff on charges he did not commit without probable cause and for the improper purpose of interfering with his right of free speech and the right to petition government for redress of grievances guaranteed by the First and Fourteenth Amendments to the United States Constitution; and to retaliate against him for exercising his First Amendment right to join in the suit against ALACHUA to contest Alachua's 2006 election on grounds of misconduct of its officers and officials.

310.   Defendants acted intentionally and maliciously with the express intention of depriving Plaintiff of his freedom and of his civil liberties.

311.   Plaintiff was detained and prosecuted against his will.

312.   Plaintiff has suffered damages as a direct and proximate result of the malicious prosecution on false charges, including loss of his freedom, physical discomfort, pain and suffering, fear of physical assault, humiliation and embarrassment and lost income.

**WHEREFORE**, Plaintiff prays for the following relief:

A.   That this Court take jurisdiction over the parties and this cause;

B.   That this Court award Plaintiff compensatory and punitive damages against Defendants CLOVIS WATSON, JR., JEAN CALDERWOOD and ROBERT E. JERNIGAN, individually, to punish those individual Defendants for their unlawful

Page 52

actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

C.     That this Court award Plaintiff his recoverable costs together with all other relief in law and in equity to which he may be entitled.

## COUNT XII

### (State Law Claim - False Arrest – August 13, 2007)

313.     Plaintiff realleges the allegations set forth in paragraphs 2, 6 through 34, 114 through 127, and 185 through 230, and incorporates those allegations in this Count by reference.

314.     This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

315.     This is an action for damages against JERNIGAN and BARCIA brought under the laws of the State of Florida and based on the illegal arrest and detention of Plaintiff on a false charge of trespass.

316.     Defendants did not have a warrant or Court order authorizing Plaintiff's arrest or detention on August 13, 2007.

317.     Defendants had no legal basis to physically detain and arrest the Plaintiff and Defendants knew that the detention and arrest was without legal basis.

318.     Defendants had no probable cause to believe that Plaintiff had committed any crime on August 13, 2007.

319.     A reasonable police officer in similar circumstances could not have believed that Plaintiff trespassed or committed a crime on August 13, 2007 when he

attempted to file a complaint against official wrongdoing by CITY officials.

320.   Defendants arrested Plaintiff because they disagreed with the content of Plaintiff's speech, with his several suits against the CITY and because of his political activism and not because the Plaintiff was violating any law or otherwise breaching the peace.

321.   Defendants acted intentionally and maliciously with the express intention of depriving Plaintiff of his freedom and of his civil liberties.

322.   Plaintiff was detained and arrested against his will.

323.   Plaintiff has suffered damages as a direct and proximate result of his illegal arrest and detention, including loss of his freedom, physical discomfort, pain and suffering, fear of physical assault, humiliation and embarrassment.

**WHEREFORE**, Plaintiff prays for the following relief:

A.   That this Court take jurisdiction over the parties and this cause;

B.   That this Court award Plaintiff compensatory and punitive damages against Defendants ROBERT E. JERNIGAN and PATRICK BARCIA, JR., individually, to punish those individual Defendants for their unlawful actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

C.   That this Court award Plaintiff his recoverable costs together with all other relief in law and in equity to which he may be entitled.

## <u>COUNT XIII</u>

### (State Law Claim – Negligent Training / Supervision – August 13, 2007 Arrest)

324.   Plaintiff realleges the allegations set forth in paragraphs 2, 6 through 34, 113 through 127, and 185 through 230, and incorporates those allegations in this Count

by reference.

325.    This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

326.    This is an action for damages against CITY OF ALACHUA brought under the laws of the State of Florida for negligence in the training, supervision and instruction of its employees, JERNIGAN and BARCIA.

327.    At all times material hereto, ALACHUA was the employer of JERNIGAN and BARCIA

328.    JERNIGAN and BARCIA engineered the arrest and prosecution of Plaintiff on false charges of trespassing at the City police station on August 13, 2007.

329.    ALACHUA knew or should have known that GRAPSKI would be battered by the arresting officers as unwanted and unjustified physical contact was a foreseeable consequence of the custodial arrest.

330.    A reasonable governmental entity would have taken remedial action by immediately intervening in the arrest and directing its officers to release GRAPSKI.

331.    JERNIGAN and BARCIA filed charges against Plaintiff and actively assisted the State Attorney in his prosecution of Plaintiff on these false charges.

332.    JERNIGAN and BARCIA regularly reported their efforts to prosecute officials of the CITY OF ALACHUA.

333.    ALACHUA had actual knowledge of the actions that its employees had arrested GRAPSKI, had filed charges against him and had urged, encouraged and assisted his prosecution.

334.    ALACHUA knew or should have known that the charges against GRAPSKI were baseless and brought in a bad faith attempt to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests, harassment and public ridicule.

335.    ALACHUA knew or should have known that its employees (particularly JERNIGAN and BARCIA) were engaged in the malicious prosecution of the Plaintiff in connection with his August 13, 2007 arrest.

336.    A reasonable governmental entity would have taken remedial action by immediately instructing its employees to withdraw the charges and notifying the State Attorney that the charges against GRAPSKI were baseless and should be dismissed.

337.    Rather than take any such remedial action, ALACHUA allowed its agents to encourage and assist in GRAPSKI's prosecution.

338.    ALACHUA owed Plaintiff a duty of care to adequately train, instruct and supervise its police officers, including JERNIGAN and BARCIA in CITY policies and with respect to the application of state and local law, including the statutes governing trespass and the right of citizens to petition government for redress of their grievances.

339.    ALACHUA breached its duty to Plaintiff by failing to adequately train, instruct and supervise its employees, including JERNIGAN and BARCIA.

340.    ALACHUA breached its duty to Plaintiff by failing to take any remedial action following actual and imputed knowledge of the ongoing malicious prosecution of the Plaintiff.

341.    Had JERNIGAN and BARCIA been adequately trained, instructed and supervised, those officials would not have arrested Plaintiff, would not have charged

Plaintiff and would not have encouraged and assisted in the prosecution of Plaintiff for a non-existent crime.

342.    Plaintiff suffered damages as a direct and proximate result of ALACHUA's failure to exercise reasonable supervision of its agents and employees, including JERNIGAN and BARCIA.

**WHEREFORE**, Plaintiff prays for the following relief:

A.    That this Court take jurisdiction over the parties and this cause;

B.    That this Court award Plaintiff money damages against ALACHUA pursuant to §768.28, Fla.Stat. to compensate Plaintiff for the injuries ALACHUA's negligence caused him to suffer.

C.    That this Court award Plaintiff his recoverable costs together with all other relief in law and in equity to which he may be entitled.

## COUNT XIV

### (State Law Tort Claim – Battery - August 13, 2007)

343.    Plaintiff realleges the allegations set forth in paragraphs 2, 6 through 34, 114 through 127, and 185 through 230, and incorporates those allegations in this Count by reference.

344.    This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

345.    This is an action against JERNIGAN and BARCIA to recover damages for battery.

346. While serving in his capacity as Chief of Police for the City of ALACHUA, JERNIGAN had offensive, non-consensual physical contact with Plaintiff.

347. While serving in his capacity as a police officer for the City of ALACHUA, BARCIA had offensive, non-consensual physical contact with Plaintiff.

348. Specifically, JERNIGAN and BARCIA handcuffed the Plaintiff and physically beat the Plaintiff when GRAPSKI passively refused to walk with BARCIA following his unlawful arrest on August 13, 2007.

349. JERNIGAN and BARCIA knew that there was no legal basis to touch Plaintiff or to beat him in response to his passive refusal to accompany them.

350. Plaintiff's arrest was illegal and without probable cause; any contact with Plaintiff arising from the illegal detention and seizure of his person is likewise illegal and without justification.

351. As a direct and proximate result of Defendants' physical assaults on Plaintiff, Plaintiff has suffered damages, including loss of his freedom, physical discomfort, pain and suffering, fear of physical assault, humiliation and embarrassment.

WHEREFORE, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause.

B. That this Court award Plaintiff compensatory and punitive damages against Defendants JERNIGAN and BARCIA, individually, to punish them for their unlawful actions and to deter JERNIGAN and BARCIA and others from engaging in the same or similar acts in the future.

C. That this Court award Plaintiff his recoverable costs together with all other relief in law and in equity to which he may be entitled.

## COUNT XV

### (State Law Claim – Malicious Prosecution – August 13, 2007)

352.   Plaintiff realleges the allegations set forth in paragraphs 2, 6 through 34, 114 through 127, and 185 through 230, and incorporates those allegations in this Count by reference.

353.   This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

354.   This is an action for damages against JERNIGAN and BARCIA brought under the laws of the State of Florida and based on the malicious prosecution of Plaintiff.

355.   Defendants had no probable cause to believe that Plaintiff had committed the crime of trespass on August 13, 2007.

356.   The initial decision to arrest Plaintiff was not based on probable cause to believe that Plaintiff had committed any crime, but rather was motivated by a malicious desire on the part of JERNIGAN and BARCIA to harass the Plaintiff and interfere with his attempts to petition the government for redress of grievances.

357.   Any criminal culpability attributable to Plaintiff arises only from his interaction with officer Lattimer which occurred at some time *after* Plaintiff's arrest for trespass and *after* the unconstitutional acts complained of in this litigation.

358.   A reasonable official in similar circumstances could not have believed that Plaintiff committed a crime at the time of Plaintiff's arrest for trespass on August 13, 2007.

359.   JERNIGAN and BARCIA filed criminal charges against Plaintiff knowing

at the time they did so that Plaintiff had not committed any crime.

360.    Defendants maliciously filed and pursued criminal charges against Plaintiff on charges he did not commit without probable cause and for the improper purpose of interfering with his right of free speech and the right to petition government for redress of grievances guaranteed by the First and Fourteenth Amendments to the United States Constitution; and to retaliate against him for exercising his First Amendment right to join in the suit against ALACHUA to contest Alachua's 2006 election on grounds of misconduct of its officers and officials.

361.    Defendants acted intentionally and maliciously with the express intention of depriving Plaintiff of his freedom and of his civil liberties.

362.    Plaintiff was detained and prosecuted against his will.

363.    The attempt to prosecute Plaintiff for trespass and for battery against JERNIGAN and BARCIA resulted in a jury verdict in favor of the Plaintiff.

364.    The single criminal charge upon which Plaintiff was convicted arose from conduct after Plaintiff's arrest for trespass and involved an officer not at issue in this litigation. That conviction is currently on appeal.

365.    Plaintiff has suffered damages as a direct and proximate result of the malicious prosecution on false charges, including loss of his freedom, physical discomfort, pain and suffering, fear of physical assault, humiliation and embarrassment and lost income.

**WHEREFORE**, Plaintiff prays for the following relief:

A.    That this Court take jurisdiction over the parties and this cause;

B.    That this Court award Plaintiff compensatory and punitive damages

against Defendants ROBERT E. JERNIGAN and PATRICK BARCIA, JR., individually, to punish those individual Defendants for their unlawful actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

C.      That this Court award Plaintiff his recoverable costs together with all other relief in law and in equity to which he may be entitled.

**Demand for Jury Trial**

366.     GRAPSKI demands trial by jury on all claims made herein.

GARY S. EDINGER & ASSOCIATES, P.A

_____/s/ Gary S. Edinger_____

| JOSEPH W. LITTLE, Esquire | GARY S. EDINGER, Esquire |
|---|---|
| Florida Bar No. 196749 | Florida Bar No.: 0606812 |
| 3731 N.W. 13th Place | 305 N.E. 1st Street |
| Gainesville, Florida 32605 | Gainesville, Florida 32601 |
| (352) 273-0660 | (352) 338-4440/ 337-0696 (Fax) |
| littlegnv@gmail.com | GSEdinger@aol.com |

*Attorneys for Plaintiff*

I HEREBY CERTIFY that a true and correct copy of the foregoing Amended Complaint has been furnished to JOSEPH R. FLOOD, JR., Esquire and JOSHUA B. WALKER, Esquire, Dean, Ringers, Morgan & Lawton, P.A., Post Office Box 2928, Orlando, Florida 32802-2928; and to MICHAEL J. ROPER, Esquire and CHRISTOPHER R. FAY, Esquire, Bell & Roper, P.A., 2707 E. Jefferson Street, Orlando, Florida 32803, via the CM/ECF System this 5th day of November, 2010.

_____/s/ Gary S. Edinger_____
GARY S. EDINGER, Esquire
Florida Bar No.: 0606812