UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| **CHARLES JAMES GRAPSKI**, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.:  1:10-cv-00140-MP-GRJ |
| v. | ) | |
| | ) | |
| **CITY OF ALACHUA, FLORIDA**, | ) | |
| a Florida municipal corporation, | ) | |
| **CLOVIS WATSON, JR.**, individually, | ) | |
| **JEAN CALDERWOOD**, individually, | ) | |
| **ROBERT E. JERNIGAN**, individually, | ) | |
| **GIB COERPER**, individually, and | ) | |
| **PATRICK BARCIA, JR.**, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | / | |

## PLAINTIFF'S RESPONSE TO THE CITY'S MOTION TO DISMISS AMENDED COMPLAINT

COMES NOW the Plaintiff, by and through his undersigned attorneys, and responds to the Motion to Dismiss (Doc. 31) filed by the CITY OF ALACHUA and says:

1.     In order to state a cause of action under 42 U.S.C. §1983, Plaintiff need only plead that a "person" has deprived him of a federal right under color of state law. The City is a "person" under §1983 and is fully liable to Plaintiff for violating his rights.

2.     Plaintiff has properly pled that the violation of his civil rights was the result of a custom or policy of the City of Alachua, established and implemented by its final decision makers, including City Manager Watson, Police Chief Jernigan, Mayor Calderwood and Mayor Coerper. The City of Alachua engaged in a calculated effort over several years to censor Plaintiff's political speech and to harass him until he abandoned his political advocacy.

3.     Plaintiff has also stated a cause of action under state law for a variety of tort offenses and will show that there are no legal or statutory bars to maintaining those actions.

## MEMORANDUM OF LAW

### STANDARD OF REVIEW

For the purposes of the Motion to Dismiss, the Court must view the allegations of the Complaint in the light most favorable to the Plaintiff, must consider the allegations of the Complaint as true, and must accept all reasonable inferences therefrom. *See*, Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1534 (11th Cir. 1994); *See, also*, Speaker v. U.S. Centers for Disease Control and Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007).[1] "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556.

### I.     PLAINTIFF'S COMPLAINT COMPLIES WITH THE REQUIREMENTS OF RULE 8(a).

Given the complexities of this case, Plaintiff's Amended Complaint is the very antithesis of a shotgun pleading. Rather, the Amended Complaint represents the correct balance between the need for specificity required in a civil rights action and the need to

---

[1]  The Eleventh Circuit no longer employs a heightened form of scrutiny when evaluating civil right claims. Our Circuit now recognizes that the heightened pleading requirement was overruled by Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) and that the Iqbal / Twombly standards apply to every case, including §1983 actions. *See*, Randall v. Scott, 610 F.3d 701, 710 (11th Cir. 2010).

draft a relatively concise pleading. This is a complex story involving many inter-related events and multiple individuals acting over a period of several years. Plaintiff has done a yeoman's job of relating that complex story in a sensible and orderly manner, identifying the particular policies and policymakers, and setting forth all of those separate legal theories which support a recovery under the U.S. Constitution or state law. In terms of format, it is appropriate to incorporate specific facts listed in the common allegations in support of each separate claim.[2]

Rules 8(a) Fed.R.Civ.P. simply requires that a complaint set forth a plaintiff's claim in a straightforward manner. In this case, the City essentially complains that the Amended Complaint is very long and takes a modicum of effort to read. (Doc. 31 at 4-7). *Compare*, Barnes v. A. Sind & Associates, 32 F.R.D. 39, 40 (D. Md. 1963) ("[S]hort of abuse or practical impropriety, a reasonable latitude should be allowed to a pleader in the statement of his claim or defense; and that not every dubious or errant phrase in a pleading should be eradicated from it to suit the taste of a critical adversary."). Federal pleadings are only required to give reasonable notice to defendants of the claims asserted. *See*, Harrison v. Benchmark Electronics Huntsville, Inc., 593 F.3d 1206, 1214 (11th Cir. 2010), *quoting* Twombly, 550 U.S. at 555, 127 S.Ct. at 1964 ("The point is to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"). There is no question here that the City understood the Amended Complaint and was able to respond fully and comprehensively to all of the claims asserted.

---

[2]  Plaintiff has done so *selectively* without simply readopting every allegation in every previous paragraph in each count. For example, the introductory paragraph to Count IV incorporates only the following preceding paragraphs: "1 through 5, 10 through 34, 69 through 102 and 112 through 128" (Doc. 34 at 28, ¶167).

> Dismissal under Rule 8 is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). To merit dismissal, a complaint must be so long and confusing as to "overwhelm the defendants' ability to understand or to mount a defense." Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir. 2004); *see also* In re Parmalat Sec. Litig., 375 F.Supp.2d 278, 311 (S.D. N.Y. 2005) (declining to dismiss a 368-page complaint). It is "generally ... an abuse of discretion to deny leave to amend when dismissing a non-frivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8."

Warner Bros. Entertainment Inc. v. Ideal World Direct, 516 F.Supp.2d 261, 269 (S.D. N.Y. 2007).

Plaintiff is entitled to present multiple causes of action, including both constitutional and state law claims.[3] He is obligated to support those claims with sufficient facts to demonstrate that the claims are not conclusory or speculative. Plaintiff has done so here with the detail necessary to give Defendants proper notice of their liability and the grounds therefore. *See*, Barnes v. A. Sind & Assoc., 32 F.R.D. at 40 ("What is a 'short and plain' statement depends upon the nature of the case."); *See, also*, North Carolina v. McGuirt, 114 Fed.Appx. 555, 558, 2004 WL 2603703, *2 (4th Cir. 2004) ("[C]ourts have looked to various factors, including the length and complexity of the complaint… [and] whether the complaint was clear enough to enable the defendant to know how to defend himself…").

---

[3]  Plaintiff has alleged that the City engaged in a series of police actions against him, all of which are part of the same campaign of harassment and censorship. There is nothing wrong with claiming that the actions, individually and collectively, have violated Plaintiff's constitutional rights. Similarly, there is nothing wrong with asserting that a particular action was both a state law tort and a Federal constitutional violation. *See, generally*, Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473 (1961) (The fact that a state law remedy is available does not preclude the federal cause of action).

II.      **NO PART OF THE AMENDED COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS OR BY ESTOPPEL.**

      A.      **Plaintiff's claims associated with the May 1, 2006 arrest were timely filed.**

Grapski concedes that any cause of action he might have had for the arrest on May 1, 2006 is time barred. However, the Plaintiff has *not* alleged a false arrest claim with respect to the May 1st incident. Rather, Plaintiff has asserted First Amendment claims tied to the City's efforts to pursue those charges[4] and a claim for negligent supervision / training against the City.[5] Those claims did not mature until November 16, 2006, when the charges against Plaintiff were dismissed as unwarranted in law and fact.

In Florida, the statute of limitations for both acts of negligence and intentional torts is four years, §§95.11 (a), (o), Fla.Stat. The four year period starts to run when the cause of action accrues. The "cause of action accrues when the last element constituting the cause of action occurs." §95.031(1), Fla.Stat. Plaintiff's claims against the City

---

[4]  The City raises the issue of sovereign immunity in a footnote, relying on a case which holds that a municipality cannot be sued for malicious prosecution under Florida law. (Doc. 31 at 8, fn 5 *citing* Coconut Creek v. Fowler, 474 So.2d 820 (Fla. 4th DCA 1985). However, Plaintiff has *not* sued the City for the state law tort of malicious prosecution. The claim for malicious prosecution in Count VI is limited to two individuals, Watson and Jernigan. (Doc. 24 at  40-42). Plaintiff *has* sued the City for First Amendment violations associated with the May 1st arrest. Those Federal claims are not affected by state statutes purporting to limit municipal liability. *See*, Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035 (1978) ("Local governing bodies therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief…"). With respect to Plaintiff's state tort action against the City [Count VII Doc. 24 at 42-45], the limitation on the waiver of sovereign immunity found in §768.28(9), Fla.Stat. applies only to intentional acts and does not encompass actions founded on negligence. Accordingly, Plaintiff can sue the City for negligence without triggering the immunity discussed in Coconut Creek.

[5]  The City claims, incorrectly, that Plaintiff cannot state a cause of action against a municipality for negligent training or negligent supervision. The law clearly holds otherwise. *See*, argument *infra* at 18-20.

ripened only when the prosecution arising from the May 1, 2006 arrest terminated in his favor. *See*, Olson v. Johnson, 961 So.2d 356, 359-60 (Fla. 2d DCA 2007) ("For a cause of action for malicious prosecution, the right to maintain a suit arises upon termination of the prosecution favorably to the plaintiff."); *See, also*, Whiting v. Traylor, 85 F.3d 581, 584 (11th Cir. 1996) (Stating that malicious prosecution is the closest analog to a §1983 action claiming arrest and prosecution for improper purposes).

The charges against Plaintiff were dismissed on November 16, 2006. (Doc. 24 at 9). The instant action was commenced prior to November 16, 2010.[6] Plaintiff's claims for violation of his First Amendment rights and for negligent supervision associated with the 2006 incident are therefore brought within the applicable statute of limitations.

**B.     Heck has no application to this case; Plaintiff is not estopped from bringing charges associated with a false arrest for which he was acquitted.[7]**

Grapski has asserted claims against the City arising out of his arrest on August 13, 2007 and the resulting unsuccessful prosecution. (Doc. 24 at 31-40, 54-57 [Counts V and

---

[6] The Amended Complaint was filed on November 5, 2010, which represents a timely filing. (Doc. 24). However, Plaintiff's claims would actually relate back to the date the original Complaint was filed; to-wit: July 20, 2010. (Doc. 1). *See*, Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993) ("An amendment relates back to the original filing…")

[7] Much of the City's brief, and all of the hundreds of pages for which the City seeks judicial notice (Doc. 16), is devoted to character assassination rather than legal argument. *See, e.g.*, Doc. 31 at 14-15 referring to GRAPSKI as a "habitual felony offender" and at 2 fn 1 decrying his "maniacal outburst" at a court hearing. The fact that the Plaintiff has been convicted of a crime and is passionate in his political advocacy does not mean that the Constitution has abandoned him. It does no disservice to the civil rights movement to remember that Martin Luther King, Jr. spent his fair share of time in jail in pursuit of political reforms which were not popular with his contemporaries. See, "Letter from Birmingham Jail" April 16, 1963, M.L. King, Jr., text accessible at www.stanford.edu/group/King/frequentdocs/birmingham.pdf. (Accessed 12/19/20).

XIII]).[8] The City has attacked these claims on the alleged grounds that they constitute a collateral attack on unreversed convictions in violation of the rule of Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994).

Heck has no application to this case. In the first instance, Grapski makes no claim arising out of an unreversed conviction. The allegations regarding these matters appear in paragraphs 185 through 227 of the Amended Complaint. (Doc. 24). They allege, *inter alia*, that Grapski was arrested and prosecuted on charges of trespass, battery upon Defendant Jernigan, and resisting arrest with violence. They also specifically allege that Grapski was *ACQUITTED* on these three charges. (Doc 24 at 38, ¶225). To clarify matters further, Grapski specifically stated that he is not pursuing any claims with respect to the charges on which he was convicted. (Doc 24 at 38, ¶226).[9] There is no necessary factual or legal relationship between the invalid arrest and the claim of battery on a law enforcement officer that came well afterwards.

Because Heck pertains to collateral attacks on an unreversed *conviction* it has no application to claims arising out of *acquittals,* such as those Grapski has made. Dyer v. Lee, 488 F.3d 876 (11th Cir. 2007) demonstrates the narrowness of Heck's holding. There, the tort plaintiff had pleaded guilty to a charge of resisting an arrest with violence. Id. at 882. The appellate court held that Heck would not bar a civil action based upon

---

[8]   The City incorrectly includes Counts XII, XIV and XV in its Motion to Dismiss. Those Counts are brought only against Jernigan and Barcia as individuals and are not directed to the City. (Doc. 24 at 53-54, 57-61).

[9]  Plaintiff's conviction is currently, on appeal. *See*, Grapski v. State, (Fla. 1st DCA Case No.: 1D10-333). Grapski was convicted on charges of battering a police officer as a result of an incident that occurred after his false arrest and in a different location. The allegations in Plaintiff's Complaint are not contradicted by the documents the Defendant filed in conjunction with its Request for Judicial Notice. (Doc. 16).

excessive force used upon the plaintiff *after* the arrest because success on the claim would "not negate the underlying conviction." Id. at 883. This is an *a fortiori* case.

There is nothing inconsistent about Plaintiff's claim that he was falsely arrested[10] and the State's claim that a law enforcement officer was subsequently battered. As the leading case in this Circuit put it:

> Because an illegal search or arrest may be followed by a valid conviction, *see* id.*,* a successful §1983 action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction. As a result, Heck does not generally bar such claims. *See* Datz v. Kilgore, 51 F.3d 252, 253 n. 1 (11th Cir. 1995) (per curiam)… (footnotes omitted).

Hughes v. Lott, 350 F.3d 1157, 1160-61 (11th Cir. 2003); *See, also,* Cedeno v. Gee, 2010 WL 1417273, *4 (M.D. Fla. 2010).

The fact that Plaintiff was convicted of battery on a law enforcement officer says nothing about the lawfulness of his arrest or his ability to pursue damages for an illegal arrest. *See*, Dyer v. Lee, 488 F.3d at 879 ("[T]he lawfulness of the arrest is not an element of the offense of resisting arrest with violence."). Plaintiff states a cause of action against the Defendants in connection with the August 13, 2007 arrest and the Motion to Dismiss must be denied.[11]

**III.    PLAINTIFF HAS SATISFIED THE MONELL REQUIREMENTS; THE COMPLAINT PROPERLY ALLEGES A VIOLATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF LAW BASED ON AN ESTABLISHED CUSTOM OR POLICY.**

---

[10]   The jury acquitted Grapski on the original charge that he was trespassing on City property. (Doc 24 at 38, ¶225).

[11]   The Defendant's discussion of cases involving the excessive use of force is inapposite. (Doc. 31 at 11). Excessive use of force cases typically presuppose that probable cause existed for the arrest but claim that the manner in which the arrest was effected violated the Fourth Amendment. Here, Grapski alleges that there was no probable cause for his arrest and makes no mention of excessive force. (Doc. 24 at 36).

**A.      Plaintiff properly alleges the existence of a custom or policy.**

Plaintiff properly states a cause of action against the City for violation of his

Federal civil rights under 42 U.S.C. §1983:

> By the plain terms of §1983, two - and only two - allegations are required
> in order to state a cause of action under that statute. First, the plaintiff
> must allege that some person has deprived him of a federal right. Second,
> he must allege that the person who has deprived him of that right acted
> under color of state or territorial law.

Gomez v. Toledo,  446 U.S. 635, 640, 100 S.Ct. 1920, 1923 (1980); *See, also*, McKinley

v. Kaplan, 177 F.3d 1253, 1257-58 (11th Cir. 1999) (Same).

While the City characterizes Plaintiff's Complaint as an "ill-conceived attempt to

inflate basic, pedestrian interactions into claims of constitutional deprivation" (Doc. 31 at

6), the City does not actually argue that its repeated arrests and removal of Plaintiff from

public meetings were lawful.[12] Furthermore, the City does not claim that the individuals

named as responsible parties were not in policymaking positions[13] or that those

individuals were not operating under color of state law.[14] Instead, the City argues that

Plaintiff has not sufficiently pled the existence of a custom or policy. (Doc. 31 at 12-16).

---

[12] *See*, Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996) ("A detention on the
basis of a false arrest presents a viable section 1983 action.").

[13] Plaintiff properly identifies the relevant policymaker in each of his Counts. *See, e.g.*,
Doc. 24 at ¶¶ 33, 34, 44, 63, 89, 99, 109, 130, 141, 193.

[14] "Misuse of power, possessed by virtue of state law and made possible only because
the wrongdoer is clothed with the authority of state law, is action taken 'under color of'
state law.'" Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 482 (1961). In the Eleventh
Circuit, "[a] person acts under color of state law when he acts with authority possessed by
virtue of his employment with the state," Almand v. DeKalb County, 103 F.3d 1510,
1513 (11th Cir. 1997). Plaintiff specifically alleged that the Defendants were operating
under color of law and that abuse of their legal authority was the proximate cause of
Plaintiff's constitutional injuries. (Doc. 24 at 17-19).

Under Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978), Plaintiff's claim against the City cannot rest on *respondeat superior*, but must allege a policy, practice or custom. Obviously, no city is going to adopt a formal written policy directing its agents to violate the constitutional rights of its citizens. However, a viable claim can be stated based on an unofficial custom which is sufficiently widespread so that it can be considered to have assumed the force of law:

> Clearly, the City did not have a formal policy condoning or endorsing sexual harassment or sexual assault by City employees. Nevertheless, §1983 liability may be imposed on a municipality based on "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." …:
>
>> [t]o prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, "although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law."
>
> [Brown v. City of Fort Lauderdale, 923 F.2d 1474 (11th Cir. 1991)] at 1481 (citations omitted). In addition, we have also held that a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy "if the municipality tacitly authorizes these actions or displays deliberate indifference" towards the misconduct. Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987).

Griffin v. City of Opa-Locka, 261 F.3d 1295, 1308 (11th Cir. 2001).

"In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." Ludaway v. City of Jacksonville, Fla., 245 Fed.Appx. 949, 951 (11th Cir. 2007). However, "[m]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005) *quoting* Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298 (1986); *See, also*, Doe v. Faerber, 446 F.Supp.2d 1311, 1316 (M.D. Fla. 2006) ("Even in the

absence of an express policy or custom, a local government body can be held liable 'for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision.'"). In this case, Plaintiff has asserted many separate violations of his rights over a period of years, each of which lends credence to his claim that the City has adopted and enforced a policy to thwart Plaintiff's political activities.[15]

Along these same lines, the Eleventh Circuit has held that a government can be deemed to have ratified the unconstitutional acts of its employees where it fails to correct constitutional violations:

> A causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,"

Gonzalez v. Reno, 325 F.3d 1228, 1234-35 (11th Cir. 2003); *See, also* Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985) ("[A] persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a "custom" within the meaning of Monell."); Kopf v. Wing, 942 F.2d 265, 269 (4th Cir. 1991) (Custom or policy can be shown by the "irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example.").

Oftentimes, the claim of blind indifference takes the form of a claim that the

---

[15]   The City inexplicably asserts that "the 'series' of unconstitutional conduct, at best, comes down to a single arrest on 2/12/07 and the resulting prosecution…". (Doc. 31 at 14). The City studiously ignores the remainder of Plaintiff's Amended Complaint which alleges three arrests, two instances of removal from City Commission meetings, several instances in which trespass notices were improperly issued and a host of harassing actions, including the leaking of private financial information. *See*, Doc. 24 generally.

government failed to adequately train its employees despite knowledge that training was necessary to avoid particular constitutional abuses:

> Additionally, there are "limited circumstances" in which a failure to train or supervise can be the basis for liability under §1983... These "limited circumstances" occur only where (1) the government entity inadequately trains or supervises its employees, (2) this failure to adequately train or supervise is the policy of the government entity, and (3) the policy causes its employees to violate a citizen's constitutional rights.

Doe v. Faerber,  446 F.Supp.2d 1311, 1316-17 (M.D. Fla. 2006); *See, also* Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) ("[T]he Supreme Court has further explained that a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a "deliberate indifference" to the rights of its inhabitants...").

The City suggests that it was free to abuse the Plaintiff and deny access to its facilities because the buildings are owned by the City:

> In regard to the complaints that GRAPSKI was "removed" from CITY property, the law is clear that the CITY has the same right as a private landowner to issue a trespass warning against any person so as to allow the orderly functioning of public business. Adderly v. Florida 385 U.S. 39 (1966).

(Doc. 31 at 14). Adderly clearly does *not* allow government to control speech and access to the same extent as a private landowner. Rather, Adderly stands for the proposition that government may impose content-neutral limits on speech in non-public fora. In Adderly, the speech took place at a jail – a singularly inappropriate place for a protest.

In contrast, Grapski sought to speak at a city commission meeting and requested access to city leaders at their public offices during normal business hours. All of those activities took place at what the Courts refer to as limited public fora. *See*, Brown v. City of Jacksonville, Fla., 2006 WL 385085, 6 (M.D. Fla. 2006) and cases cited therein. The government's ability to restrict speech and access in those circumstances is decidedly

limited and is not equivalent to that of a private landowner. *See, generally*, Perry Educ. Ass'n. v. Perry Local Educators' Assn., 460 U.S. 37, 45, 103 S.Ct. 948, 955 (1983); Brown v. Jacksonville, *supra*. When those restrictions are based on the content of speech, as Grapski alleges here,[16] the government action is always unconstitutional unless supported by a compelling interest. *See, e.g.*, Jones v. Heyman, 888 F.2d 1328, 1331 (11th Cir. 1989).[17]

**B.     Plaintiff properly alleges liability under Monell for his "class of one" Equal Protection claim.**

The City makes the nonsensical argument that, because Plaintiff is the only person against whom the City has applied its policy of censorship and harassment, there can be no policy for purposes of Monell. (Doc. 31 at 14-14).[18] In fact there is nothing inconsistent in pleading that the City has established a policy which it has applied, thus far, only against a single citizen. Indeed, ever since the Supreme Court decided Pembaur v. City of Cincinnati, 75 U.S. at 481 106 S.Ct. at 1298, it has been "plain that municipal liability may be imposed for a single decision by municipal policymakers under

---

[16] *See, e.g.*, Doc. 24 at  ¶¶ 29, 30, 67, 97, 99, 111, 116, 127, 268, 320.

[17] The City could not categorically bar Grapski from speaking at public meetings or complaining to City officials even if he had been disruptive in the past. Allegations of a past or possible future offense cannot serve to justify a prior restraint. *See,* Near v. State of Minnesota, 283 U.S. 697, 720 51 S.Ct. 625, 633 (1931); Brown v. City of Jacksonville, *supra*. (Even if citizen could be removed on one occasion for disruptive behavior, that behavior would not warrant future restraints on her ability to attend public hearings).

[18] In a fit of scholarly embarrassment, the City confesses that "outside the very limited 14th Amendment Equal Protection context, undersigned counsel is unaware of any precedent applying a 'class of one' standard to establish municipal constitutional liability." (Doc. 31 at 14). It should be obvious that *all* "class of one" claims are necessarily brought under the Equal Protection clause of the Fourteenth Amendment. The citations to Anderson and Murphy, *infra* might guide opposing counsel's future research with respect to the Monell issue in the context of a class of one claim.

appropriate circumstances." In this case Grapski has alleged that City Manager Watson, Police Chief Jernigan, and Mayors Calderwood and Coerper all took wrongful actions that deprived him of constitutional rights while acting as the City's final decision maker.

At least two Federal Courts have previously addressed this precise argument:

> Here, defendants argue that because plaintiff states he was a "class of one," his own allegations undermine his claim. That is, "the fact that the alleged disparate treatment occurred only once clearly negates any inference of a Village policy or custom."…
>
> Recalling that we must read plaintiff's complaint liberally, we note that he alleges that his termination was the result of the decision of the village's administrator, Bruce Bonebrake. This allegation allows the inference that plaintiff's alleged deprivation was caused by a person with policymaking authority. Furthermore, defendant's argument ignores Seventh Circuit precedent-recently affirmed by the Supreme Court-allowing for "class of one" equal protection claims. Olech v. Village of Willowbrook, 160 F.3d 386 (7th Cir. 1998) aff'd, 528 U.S. 1073, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

Anderson v. Village of Oswego, 109 F.Supp.2d 930, 934-35 (N.D. Ill. 2000); See, also, Murphy v. County of McHenry, 2003 WL 1908045, *1 (N.D. Ill. 2003) ("[T]here are dozens of cases in every U.S. Court of Appeals… brought against municipalities involving "class of one" allegations without even so much as a whisper about Monell.").

Grapski alleges that the City has repeatedly harassed and arrested him as part of a policy to censor and discredit his political activities. Logic dictates that the City would not harass and arrest every one of its citizens under this policy. Rather, it would arrest only those who are engaged in political activities with which it disagrees. The City's policy has been applied most forcefully against Grapski because he is the foremost activist criticizing City policies and personnel.

## IV.   DEFENDANT'S FOURTEENTH AMENDMENT ARGUMENTS ARE MISDIRECTED.

Defendant's arguments with respect to the due process clause of the Fourteenth Amendment are puzzling because Plaintiff does not raise any due process claims. (Doc. 31 at 16-17). While Plaintiff asserted an Equal Protection claim under the Fourteenth Amendment, that count is not based on the due process clause. (Doc. 24 at 25-28 [Count III]). Plaintiff's other references to the Fourteenth Amendment are merely a formalistic nod to the incorporation doctrine; the First Amendment applies to the states because it is subsumed within the Fourteenth Amendment concept of due process.

## V.   DEFENDANT'S ARGUMENTS PERTAINING TO DECLARATORY RELIEF ARE MISDIRECTED.

Defendant argues that Plaintiff is not entitled to declaratory relief in Count II of the Complaint because he is barred from accessing City property under a state law order of community control.[19] The City claims that there is no present dispute between the parties that would support prospective relief. Review of the *ad damnum* clause of Count II of the Amended Complaint [Doc. 24 at 24-24] shows that Plaintiff is only seeking damages for past violations of his constitutional rights and is not seeking prospective relief of any kind. In particular there is no demand for a declaratory judgment.

## VI.   PLAINTIFF STATES A CAUSE OF ACTION FOR A "CLASS OF ONE" EQUAL PROTECTION CLAIM.

"Class of one claims" are cognizable under the Equal Protection Clause of the Fourteenth Amendment. *See*, Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1273 (2000); *see also* Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster Cty., 488 U.S. 336, 344 (1989). To state a claim for a violation of equal protection against a

---

[19]  That particular restriction is an obvious prior restraint and is currently the subject of an ongoing appeal. *See*, Grapski v. State, (Fla. 1st DCA Case No.: 1D10-333).

"class of one," a plaintiff must allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook, 528 U.S. at 564, 120 S.Ct. at 1074; *See, also*, Campbell v. Rainbow City, 434 F.3d 1306, 1314 (11th Cir. 2006).  The law in this area is particularly well developed in Florida. S*ee* Bay Area Remodelers, Inc. v. Manatee County, Fla., 2009 WL 151140, 2 (M.D. Fla. Jan. 21, 2009) (Upholding class one claim against motion to dismiss where allegations of disparate treatment were joined to claim that treatment was intentional); Cape Canaveral Shrimp Co., Inc. v. Canaveral Port Authority Bd. of Comm'ns, 2007 WL 2819659 (M.D. Fla. Sept. 25, 2007) (denying motion to dismiss where plaintiff's complaint alleged Willowbrook standards for class of one cause of action); Pete's Towing Co. v. City of Tampa, Florida, 2008 WL 4791821 (M.D. Fla. 2008) (Plaintiff sufficiently alleged it was treated differently from similarly situated local towing services where it alleged "that the difference in treatment was intentional and was wholly irrational and arbitrary.").

In this case, Plaintiff's Amended Complaint includes the following specific allegations:

> 158.   On information and belief, GRAPSKI alleges that no other citizens have been forcibly removed from an ALACHUA City Commission meeting in the manner in which GRAPSKI was removed, nor has any other citizen been arrested for disrupting a meeting of the City Commission.

> 159.   On information and belief, GRAPSKI alleges that no other citizens have been issued a trespass notice barring them from the ALACHUA City Hall.  (Doc. 24 at 26).

The Defendant's argument that Plaintiff has failed to identify "similarly situated citizens" is easily refuted. (Doc. 31 at 20). The essence of a class of one claim is that the plaintiff is

the *only* example of the selective enforcement; by definition no one else is targeted.

Plaintiff alleges that the City provides an opportunity for public speaking and access to government leaders that is available for all citizens except Mr. Grapski. (Doc. 24 at ¶¶ 27, 29, 30, 59, 60, 73, 82, 103, 104, 106, 107). In essence, every citizen in Alachua is similarly situated to Plaintiff because every citizen in Alachua has the right to attend commission hearings and speak to the commissioners. Similarly, every citizen has the right to access public records and to complain to city officials. Plaintiff has been singled out not because of the manner in which he speaks, but because of the content of his speech and his political views. (Id.)

Plaintiff supplements those claims with specific allegations that the disparate treatment was intentional and part of a larger scheme to censor, punish and harass him:

> 163.    The disparate treatment of the Plaintiff was motivated by an invidious purpose; to-wit: to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests, harassment and public ridicule, all in an effort to dissuade him from pursuing public records requests, from seeking political reforms, from engaging in political activities and as punishment for having exercised those fundamental constitutional rights.

> 164.    The disparate treatment of the Plaintiff was further motivated by Defendants' desire to retaliate against Plaintiff for having sued the CITY and because Plaintiff actively defended against each of the false arrests and prosecutions undertaken by the CITY and the individual Defendants.  (Doc. 24).

Plaintiff even identifies a particular speaker who was treated differently on the very night that Plaintiff was forcibly removed from a commission meeting. (Doc. 24 at 16-17 [identifying Robert Sharpe as a favored speaker]).

Defendant's reliance on Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 128 S.Ct. 2146 (2008) is completely misplaced. Engquist was limited to an equal

protection claim in the context of public employment. Grapski is not employed by the City. The standards adopted by the Supreme Court in <u>Village of Willowbrook</u> apply with full force to private citizens who are not employed by the government.

## VII.   DEFENDANT'S ARGUMENTS PERTAINING TO THE FLORIDA CONSTITUTION ARE MISDIRECTED.

Plaintiff properly refers to the Florida Constitution in his Amended Complaint because the state Constitution mirrors the protections of the United States Constitution. *See, generally*, <u>MacLean v. City of St. Petersburg</u>, 194 F.Supp.2d 1290, 1303 (M.D. Fla. 2002). In addition, the Florida Constitution specifically grants citizens the right to access public records – a right that is unique to the State and one of the bases for Plaintiff's claim of access to public facilities. (Doc. 24 at 4-5, ¶¶21, 28). However, the claim for damages in each of those counts which asserts a constitutional violation (Counts I through V) is clearly limited to the violation of Plaintiff's Federal constitutional rights. Plaintiff makes no attempt to recover damages under the Florida Constitution and the Amended Complaint cannot be reasonably read to imply any such demand.[20]

## VI.   <u>PLAINTIFF STATES A CAUSE OF ACTION FOR NEGLIGENT TRAINING / NEGLIGENT SUPERVISION.</u>

Plaintiff has brought several state law claims against the City for damages pursuant to §768.28(9) <u>Fla.Stat</u>. That statute provides in relevant part:

> (9)(a) No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or

---

[20] Those counts of the Amended Complaint which are based on Florida law (Counts VI through XV) involve common law tort claims and do not rely on the Florida Constitution.

with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property......The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

§768.28(9) <u>Fla.Stat.</u>

The state law claims against the City do not seek to impose vicarious liability for intentional torts. (Doc. 24 at Counts VII, IX and XIII). In particular, Plaintiff does not claim that the City is responsible for the malicious or intentional acts of its employees. Rather, Plaintiff alleges that the City is responsible for its own negligence in failing to properly train and supervise its agents, officers and employees. Florida common law recognizes the tort of negligent supervision:

Negligent supervision of an agent has long been recognized as a basis for tort liability in Florida. <u>Storm v. Town of Ponce Inlet</u>, 866 So.2d 713, 716 (Fla. 5th DCA), *review denied,* 879 So.2d 624 (Fla. 2004). Florida courts have also recognized this tort in cases involving the state or one of its agencies as a defendant. <u>Id</u>. at 717. Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment. <u>Garcia v. Duffy</u>, 492 So.2d 435, 438-39 (Fla. 2d DCA 1986). The plaintiff must allege facts sufficient to show that once an employer received actual or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action. <u>Id</u>. at 441.

<u>Department of Environmental Protection v. Hardy</u>, 907 So.2d 655, 660 (Fla. 5th DCA 2005); *See, also*, <u>Vaden v. Campbell</u>, 2009 WL 1919474, *2 (N.D. Fla. 2009) (Denying motion to dismiss negligent supervision claim against a Sheriff); <u>Wynn v. City of Lakeland</u>, 2010 WL 2976905, *10 (M.D. Fla. 2010) ("As Taylor's employer, the City had

a duty to supervise him."); <u>Mosby v. Harrell</u>, 909 So.2d 323 (Fla. 1st DCA 2005).

The Amended Complaint is not subject to dismissal for alleging that the City and its agents are both responsible for Plaintiff's damages. The Complaint asserts different causes of action against the City (negligent training / supervision) as compared to the individuals (battery, false arrest and malicious prosecution). Florida courts and Federal courts have long acknowledged that plaintiffs may plead in the alternative, as Grapski has done. *See*, <u>Johnson v. State Dept. of H.R.S.</u>, 695 So.2d 927, 931 (Fla. 2nd DCA 1997).

Defendant cannot raise a convincing defense based on sovereign immunity for discretionary functions. This claim has been considered and rejected by Florida Courts in the past. *See*, <u>Mosby</u>, 909 So.2d at 330 ("[S]overeign immunity does not uniformly preclude claims against the state and its subsidiaries for negligent training and supervision"); *See, also*, <u>Vaden v. Campbell</u>, 2009 WL 1919474 at *4 (Sovereign immunity did not protect Sheriff against claim that he failed to supervise employee).

Finally, Defendant's argument that Plaintiff fails to allege sufficient facts to support its claim for negligent training / supervision is belied by the actual allegations of the Amended Complaint. Plaintiff has properly alleged a duty to "adequately train, instruct and supervise its employees", a breach of that duty, the City' notice of the breach and damages. (Doc. 24 at ¶¶ 253-260, 278, 281-290, 329, 333-342). Those allegations include all of the elements of the cause of action required by Florida law. *See*, <u>Department of Environmental Protection v. Hardy</u>, *supra*.

WHEREFORE, the Plaintiff prays that the City's Motion to Dismiss be denied in its entirety.

GARY S. EDINGER & ASSOCIATES, P.A

_____/s/  Gary S. Edinger_____

JOSEPH W. LITTLE, Esquire          GARY S. EDINGER, Esquire
Florida Bar No. 196749             Florida Bar No.: 0606812
3731 N.W. 13th Place               305 N.E. 1st Street
Gainesville, Florida 32605         Gainesville, Florida 32601
(352) 273-0660                     (352) 338-4440/ 337-0696 (Fax)
littlegnv@gmail.com                GSEdinger@aol.com

*Attorneys for Plaintiff*

I HEREBY CERTIFY that a true and correct copy of the foregoing Response has been furnished to JOSEPH R. FLOOD, JR., Esquire and JOSHUA B. WALKER, Esquire, Dean, Ringers, Morgan & Lawton, P.A., Post Office Box 2928, Orlando, Florida 32802-2928; and to MICHAEL J. ROPER, Esquire and CHRISTOPHER R. FAY, Esquire, Bell & Roper, P.A., 2707 E. Jefferson Street, Orlando, Florida 32803, via the CM/ECF System this 22nd day of December, 2010.

_____/s/  Gary S. Edinger_____
GARY S. EDINGER, Esquire
Florida Bar No.: 0606812