UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | |
|---|---|
| **CHARLES JAMES GRAPSKI**, | ) |
| | ) |
| Plaintiff, | )   CASE NO.:  1:10-cv-00140-MP-GRJ |
| v. | ) |
| | ) |
| **CITY OF ALACHUA, FLORIDA**, | ) |
| a Florida municipal corporation, | ) |
| **CLOVIS WATSON, JR.**, individually, | ) |
| **JEAN CALDERWOOD**, individually, | ) |
| **ROBERT E. JERNIGAN**, individually, | ) |
| **GIB COERPER**, individually, and | ) |
| **PATRICK BARCIA, JR.**, individually, | ) |
| | ) |
| Defendants. | ) |
| _____ | / |

## PLAINTIFF'S RESPONSE

## TO THE MOTION TO DISMISS AMENDED COMPLAINT

## FILED BY THE INDIVIDUAL DEFENDANTS, WATSON,

## CALDERWOOD, JERNIGAN, COERPER AND BARCIA

COMES NOW the Plaintiff, by and through his undersigned attorneys, and responds to the Motion to Dismiss (Doc. 30) filed by the individual Defendants and says:

1.      Plaintiff properly states a cause of action against CLOVIS WATSON, JR., JEAN CALDERWOOD, ROBERT E. JERNIGAN, GIB COERPER and PATRICK BARCIA, JR. (the "individual Defendants") for violation of his Federal civil rights under 42 U.S.C. §1983. In order to state a cause of action under §1983, Plaintiff need only plead that a "person" has deprived him of a federal right under color of state law.

2.      Plaintiff also demonstrates below that he has stated a cause of action under state law for a variety of tort offenses and that there are no legal or statutory bars to

maintaining those actions.

3.     Qualified immunity will not relieve the Defendants of liability for the violation of Plaintiff's civil rights. No reasonable police officer could believe that he could arrest Plaintiff in the absence of probable cause, which is specifically pled in the Amended Complaint. Likewise, no mayor or commissioner could believe that Plaintiff could be excluded from a public meeting based on the content of his speech.

## MEMORANDUM OF LAW

**STANDARD OF REVIEW**

For the purposes of the Motion to Dismiss, the Court must view the allegations of the Complaint in the light most favorable to the Plaintiff, must consider the allegations of the Complaint as true, and must accept all reasonable inferences therefrom. *See*, Jackson v. Okaloosa County, Fla.*,* 21 F.3d 1531, 1534 (11th Cir. 1994); *See, also*, Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control and Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007)..[1] "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.

---

[1] The Eleventh Circuit no longer employs a heightened form of scrutiny when evaluating civil right claims. Our Circuit now recognizes that the heightened pleading requirement was overruled by Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) and that the Iqbal / Twombly standards apply to every case, including §1983 actions. *See*, Randall v. Scott, 610 F.3d 701, 710 (11th Cir. 2010).

I.  **PLAINTIFF'S COMPLAINT COMPLIES WITH THE REQUIREMENTS OF RULE 8(a).**

Given the complexities of this case, Plaintiff's Amended Complaint is the very antithesis of a shotgun pleading. Rather, the Amended Complaint represents the correct balance between the need for specificity required in a civil rights action and the need to draft a relatively concise pleading. This is a complex story involving many inter-related events and multiple individuals acting over a period of several years. Plaintiff has done a yeoman's job of relating that complex story in a sensible and orderly manner, identifying the particular policies and policymakers, and setting forth all of those separate legal theories which support a recovery under the U.S. Constitution or state law. In terms of format, it is appropriate to incorporate specific facts listed in the common allegations in support of each separate claim.[2]

Rules 8(a) Fed.R.Civ.P. simply requires that a complaint set forth a plaintiff's claim in a straightforward manner. In this case, the Defendants essentially complain that the Amended Complaint is very long and takes a modicum of effort to read. *Compare*, Barnes v. A. Sind & Associates, 32 F.R.D. 39, 40 (D. Md. 1963) ("[S]hort of abuse or practical impropriety, a reasonable latitude should be allowed to a pleader in the statement of his claim or defense; and that not every dubious or errant phrase in a pleading should be eradicated from it to suit the taste of a critical adversary."). (Doc. 30 at 4-7). Federal pleadings are only required to give reasonable notice to defendants of the

---

[2] Plaintiff has done so *selectively* without simply readopting every allegation in every previous paragraph in each count. For example, the introductory paragraph to Count IV incorporates only the following preceding paragraphs: "1 through 5, 10 through 34, 69 through 102 and 112 through 128" (Doc. 34 at 28, ¶167).

claims asserted. *See*, Harrison v. Benchmark Electronics Huntsville, Inc., 593 F.3d 1206, 1214 (11th Cir. 2010), *quoting* Twombly, 550 U.S. at 555, 127 S.Ct. at 1964 ("The point is to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"). There is no question here that the Defendants understood the Amended Complaint and were able to respond fully and comprehensively to all of the claims asserted.

> Dismissal of complaints under Rule 8 is strongly discouraged:
>
> Dismissal under Rule 8 is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). To merit dismissal, a complaint must be so long and confusing as to "overwhelm the defendants' ability to understand or to mount a defense." Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir. 2004); *see also* In re Parmalat Sec. Litig., 375 F.Supp.2d 278, 311 (S.D. N.Y. 2005) (declining to dismiss a 368-page complaint). It is "generally ... an abuse of discretion to deny leave to amend when dismissing a non-frivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8."

Warner Bros. Entertainment Inc. v. Ideal World Direct, 516 F.Supp.2d 261, 269 (S.D.N.Y. 2007).

Plaintiff is entitled to present multiple causes of action, including both constitutional and state law claims.[3] He is obligated to support those claims with sufficient facts to demonstrate that the claims are not conclusory or speculative. Plaintiff

---

[3] Plaintiff has alleged that Defendants engaged in a series of police actions against him, all of which are part of the same campaign of harassment and censorship. There is nothing wrong with claiming that the actions, individually and collectively, have violated Plaintiff's constitutional rights. Similarly, there is nothing wrong with asserting that a particular action was both a state law tort and a Federal constitutional violation. *See, generally*, Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473 (1961) (The fact that a state law remedy is available does not preclude the federal cause of action).

has done so here with the detail necessary to give Defendants proper notice of their liability and the grounds therefore. *See*, Barnes v. A. Sind & Assoc., 32 F.R.D. at 40 ("What is a 'short and plain' statement depends upon the nature of the case."); *See, also*, North Carolina v. McGuirt, 114 Fed.Appx. 555, 558, 2004 WL 2603703, *2 (4th Cir. 2004) ("[C]ourts have looked to various factors, including the length and complexity of the complaint… [and] whether the complaint was clear enough to enable the defendant to know how to defend himself…").

The Defendants provide an example of what they believe is a defect in Plaintiff's Amended Complaint, but which actually illustrates the care Plaintiff took to create a concise and readily understood pleading. Defendants complain that there are no allegations against Coerper as an individual until paragraph 108 of the Amended Complaint. (Doc. 30 at 4). Defendants point out that Coerper is nonetheless listed as one of the parties liable in Count I, which asserts claims based on the First Amendment. Let us compare the Defendants' grievances with the Plaintiff's allegations.

Plaintiff's Amended Complaint alleges the facts underlying his claims in chronological order. Allegations pertaining to Coerper's wrongdoing do not appear until paragraph 108 because he came along comparatively late during the multi-year effort to censor and harass the Plaintiff. For instance, it is apparent that Coerper was not the mayor of Alachua when Grapski was first excluded from a commission meeting on February 12, 2007 [Doc. 24 at 12-13], but that he succeeded to that position at the time of the meeting of August 6, 2007 [Doc. 24 at 16-17].

It is also entirely logical to include Coerper within Plaintiff's comprehensive First Amendment claims (Counts I and II) because Coerper's actions were part of a larger

conspiracy to violate Plaintiffs' rights of free speech and petition. (Doc. 24 at ¶¶ 29-34, 108-11). it would be little sense to isolate Coerper's actions from what amounts to a coordinated common scheme to violate Plaintiff's constitutional rights.

If Coerper's actions were artificially separated from the conspiracy against Plaintiff, it would also cripple Plaintiff's ability to show an established City policy to violate his rights. That policy is demonstrated by a series of events over the course of several years, all of which are part of the larger story. If bits of that story are removed arbitrarily, the larger meaning of those events would be lost.

The most sensible and legally sound decision is to include Coerper as one of several individuals responsible for carrying out the City's unconstitutional policies and to allow the jury to allocate the appropriate degree of culpability among the individual defendants. Jury's are well suited for performing exactly that task. *See, generally*, Finch v. City of Vernon, 877 F.2d 1497, 1503 (11th Cir. 1989) (Reviewing choice of law standards for determining apportionment of liability and damages in Federal civil rights actions).

This path also allows Plaintiff to present a comparatively streamlined Complaint. The alternative would be to allege every act over these several years in a separate count for each individual Defendant, and to repeat that exercise for each of Plaintiff's several legal theories of recovery. If Defendants got their way, the result would be a complaint of more than one hundred counts and several hundred pages. Far from creating a concise and legally intelligible Complaint, the Defendants advocate a pleading monstrosity which would complicate the work of this Court while depriving this suit of the clarity it requires.

II. **PLAINTIFF'S CLAIMS ASSOCIATED WITH THE MAY 1, 2006 ARREST WERE TIMELY FILED AND ARE NOT BARRED BY ANY STATUTE OF LIMITATIONS.**

Defendants' statute of limitations argument is completely muddled.[4] The essence of that argument is that Plaintiff cannot assert a claim for false arrest stemming from his May 1, 2006 arrest because the four year statute of limitations would bar that claim. While that is true, Plaintiff has not asserted any claims for false arrest in connection with the May 1st police action.

To their credit, Defendants noticed (Doc. 30 at 7) that Plaintiff raised a false arrest claim in connection with two other arrests (February 12, 2007 [Count VIII] and August 13, 2007 [Counts XII]) which were also linked to counts for malicious prosecution. In contrast, Plaintiff only raised a malicious prosecution claim with respect to the May 1, 2006 arrest. Defendants apparently assume that this was an oversight on the part of the Plaintiff. It apparently never occurred to the Defendants that Plaintiff intentionally omitted those claims associated with the May 1, 2006 arrest that were barred by the statute of limitations.

The Defendants' blinkered perspective led them to address only the statute of limitations applicable to false arrest claims. Defendants' discussion of that statute is accurate. However, that argument has nothing to do with Plaintiff's actual claims - which

---

[4] Defendants also misidentify the Counts subject to their arguments. (Doc. 30 at 6-7) While Count I includes a reference to the May 1st arrest and subsequent prosecution, Count III deals only with an equal protection claim. The other Count which seeks damages against Defendant in connection with the May 1st arrest is Count VI for malicious prosecution. (Doc. 24 at 40-42). It is likely that the Defendants' counsel simply did not revisit their original draft of the Motion to Dismiss after Plaintiff filed his Amended Complaint.

are based on the First Amendment on the one hand, and the state law tort of malicious prosecution on the other.

The statute of limitations for the tort of malicious prosecution runs four years after the plaintiff has been cleared of the criminal charges that resulted in his detention:

> The statute of limitations for both malicious prosecution and civil conspiracy is four years. *See* §95.11(3)(o), (p), Fla. Stat. (Supp. 1996). "A cause of action accrues when the last element constituting the cause of action occurs." §5.031(1), Fla. Stat. (1995).
>
> For a cause of action for malicious prosecution, the right to maintain a suit arises upon termination of the prosecution favorably to the plaintiff. *See* Cazares v. Church of Scientology of Cal., Inc., 444 So.2d 442, 447 (Fla. 5th DCA 1983); McMurray v. U-Haul Co., 425 So.2d 1208, 1211 (Fla. 4th DCA 1983).

Olson v. Johnson, 961 So.2d 356, 359-60 (Fla. 2d DCA 2007); *See, also*, Blaxton v. City of Tampa, 2010 WL 4174579, *1 ( (M.D. Fla. 2010) (Same).

Plaintiff's claims against the Defendants ripened only when the prosecution arising from the May 1, 2006 arrest terminated in his favor. *Compare*, Olson v. Johnson, 961 So.2d 356, 359-60 (Fla. 2d DCA 2007) ("For a cause of action for malicious prosecution, the right to maintain a suit arises upon termination of the prosecution favorably to the plaintiff."); *See, also*, Blaxton v. City of Tampa, *supra*.

Plaintiff alleges that the prosecution was dismissed on November 16, 2006. (Doc. 24 at 9). Accordingly, November 16, 2006 is the date when the statute of limitations began to run for a claim of malicious prosecution; prior to that time, the claim was not ripe. The instant action was commenced prior to November 16, 2010 which sets the outer

boundary for the four year statute of limitations.[5] Accordingly, Plaintiff's claims for malicious prosecution are timely and are not barred by any statute of limitations.

The same rationale applies to Grapski's First Amendment claims arising from the wrongful prosecution of Plaintiff for recording his conversation with Watson. The essence of that claim is that the individual Defendants brought charges and encouraged the State Attorney to prosecute Plaintiff for an action that clearly was not illegal in any way. (Doc. 24 at ¶¶ 48-51). Under this theory, the statute of limitations does not run from the date that Plaintiff recorded Watson's voice or from the date of Plaintiff's arrest. Rather, the statute would run in exactly the same fashion as a common law claim for malicious prosecution: from the date that Plaintiff secured his acquittal, dismissal of the charges or other favorable disposition of the criminal proceeding.

The Eleventh Circuit decision in Whiting v. Traylor, 85 F.3d 581, 584-86 (11th Cir. 1996) provides substantial guidance in applying a statute of limitations to a civil rights action tied to an illegal prosecution:

> The Supreme Court tells us that some section 1983 claims do not begin to accrue until well after the constitutional injury. *See* Heck v. Humphrey, 512 U.S. 477, __, 114 S.Ct. 2364, 2374, 129 L.Ed.2d 383 (1994). So, sometimes a section 1983 claim can be timely even though the claim is based on an unlawful act which occurred outside the limitations period. In determining when a section 1983 claim accrues (as well as the elements which must be pled to state a claim) we must seek help from the common law tort which is most analogous to the claim in the case before us. Id. at __, 114 S.Ct. at 2367.

---

[5] The Amended Complaint was filed on November 5, 2010, which represents a timely filing. (Doc. 24). However, Plaintiff's claims would actually relate back to the date the original Complaint was filed; to-wit: July 20, 2010. (Doc. 1). *See*, Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993) ("An amendment relates back to the original filing…")

> ….Under these circumstances (that is, where seizures are pursuant to legal process), we agree with those circuits that say the common law tort "most closely analogous" to this situation is that of malicious prosecution. *See* Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 (1st Cir. 1995) (section 1983 claim for arrest and prosecution analogous to malicious prosecution tort where arrest pursuant to legal process); *see also* Singer v. Fulton County Sheriff, 63 F.3d 110, 115-16 (2d Cir. 1995) (same). At common law, a plaintiff had no malicious prosecution claim until the underlying proceeding was terminated in his favor.
>
> So, where a section 1983 plaintiff is seized following the institution of a prosecution (for example, after a warrant has been issued for arrest or after an information has been filed) and he seeks to recover damages for all the elements of the prosecution, he can properly wait until the prosecution terminates in his favor to bring his section 1983 claim which alleges that the seizure was unreasonable. *See, e.g.,* Calero-Colon, 68 F.3d at 4; *cf.* Heck, 512 U.S. at ___, 114 S.Ct. at 2371. The statute of limitations will not bar the action as long as the action is promptly brought when the prosecution has terminated.

*See, also*, Uboh v. Reno, 141 F.3d 1000, 1002-03 (11th Cir. 1998) ("[O]ur court, however, unequivocally has identified malicious prosecution to be a constitutional tort that is cognizable under §1983.").[6]

Accordingly, Grapski's federal claims arising from his prosecution for recording Watson's conversation will be governed by the same time standards that govern his malicious prosecution claim. Since that claim was not ripe until the prosecution was resolved in Plaintiff's favor, the earliest day the statute would begin to run would be the date the charges were dismissed. That date was November 16, 2006. Plaintiff filed suit within four years of that date so the statute of limitations cannot bar his claim.

---

[6] In the Federal Courts, a claim for malicious prosecution must be founded on a violation of some substantive Federal right. Courts have found that malicious prosecution claims can be based on either Fourth Amendment or First Amendment claims. *See, e.g.*, Whiting v. Traylor, *supra*; and Uboh v. Reno, *supra* (Fourth Amendment) and Thomas v. City of New York, 2008 WL 3456173 (S.D. N.Y. 2008) (First Amendment).

### III. HECK HAS NO APPLICATION TO THIS CASE; PLAINTIFF IS NOT ESTOPPED FROM BRINGING CHARGES ASSOCIATED WITH A FALSE ARREST FOR WHICH HE WAS ACQUITTED.

Grapski has asserted claims against the Defendants arising out of his arrest on August 13, 2007 and the resulting unsuccessful prosecutions. (Doc. 24 at 30-40, 54-57 [Counts V and XIII]). The Defendants have attacked these claims on the alleged grounds that they constitute a collateral attack on un-reversed convictions in violation of the rule of Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994).

Heck has no application to this case. In the first instance, Grapski makes no claim arising out of an unreversed conviction. The allegations regarding these matters appear in paragraphs 185 through 227 of the Amended Complaint. (Doc. 24). They allege, *inter alia*, that Grapski was arrested and prosecuted on chargers of trespass, battery upon Defendant Jernigan, and resisting arrest with violence. They also specifically allege that Grapski was **ACQUITTED** on these three charges. (Doc 24 at 38, ¶225). To clarify matters further, Grapski specifically stated that he is not pursuing any claims with respect to the charges on which he was convicted. (Doc 24 at 38, ¶226).[7] There is no necessary factual or legal relationship between the invalid arrest and the claim of battery on a law enforcement officer that came well afterwards.

Because Heck pertains to collateral attacks on an unreversed *conviction* it has no application to claims arising out of *acquittals,* such as those Grapski has made. Dyer v.

---

[7] Plaintiff's conviction is currently, on appeal. See, Grapski v. State, (Fla. 1st DCA Case No.: 1D10-333). Grapski was convicted on charges of battering a police officer as a result of an incident that occurred after his false arrest and in a different location. The allegations in Plaintiff's Complaint are not contradicted by the documents the Defendant filed in conjunction with its Request for Judicial Notice. (Doc. 16).

Lee, 488 F.3d 876 (11th Cir. 2007) demonstrates the narrowness of Heck's holding. There, the tort plaintiff had pleaded guilty to a charge of resisting an arrest with violence. Id. at 882. The appellate court held that Heck would not bar a civil action based upon excessive force used upon the plaintiff *after* the arrest because success on the claim would "not negate the underlying conviction." Id. at 883. This is an *a fortiori* case.

There is also nothing inconsistent about Plaintiff's claim that he was falsely arrested[8] and the State's claim that a law enforcement officer was subsequently battered. As the leading case in this Circuit put it:

> Because an illegal search or arrest may be followed by a valid conviction, *see* id.*,* a successful §1983 action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction. As a result, *Heck* does not generally bar such claims. See Datz v. Kilgore, 51 F.3d 252, 253 n. 1 (11th Cir. 1995) (per curiam)… (footnotes omitted).

Hughes v. Lott, 350 F.3d 1157, 1160-61 (11th Cir. 2003); *See, also*, Cedeno v. Gee, 2010 WL 1417273 (M.D. Fla. 2010).

The fact that Plaintiff was convicted of battery on a law enforcement officer says nothing about the lawfulness of his arrest or his ability to pursue damages for an illegal arrest. *See*, Dyer v. Lee, 488 F.3d at 879 ("[T]he lawfulness of the arrest is not an element of the offense of resisting arrest with violence."). Plaintiff states a cause of action against the Defendants in connection with the August 13, 2007 arrest and the Motion to Dismiss must be denied.

---

[8] The jury acquitted Grapski on the original charge that he was trespassing on City property. (Doc 24 at 38, ¶225).

### III.  QUALIFIED IMMUNITY.

Consideration of the Defendant's claim of qualified immunity is governed by the Supreme Court's decision in Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808, 817 (2009). Generally speaking, a plaintiff must show that the officer's conduct violated a constitutional right and that the right was clearly established in the law. This Court follows a three part test when analyzing qualified immunity claims:

> To receive qualified immunity, the public official must show that he was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *See* Ferraro, 284 F.3d at 1194... Once it is established that the defendant was acting within her discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id. In evaluating claims of qualified immunity, we apply the two-part Saucier test: (1) "As a 'threshold question', a court must ask, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' "; and (2) "If a constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine 'whether the right was clearly established.' " Id. (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)). This inquiry, in turn, "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting Saucier, 533 U.S. at 201, 121 S.Ct. at 2156). In Saucier, the Supreme Court noted that "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." 533 U.S. at 201, 121 S.Ct. at 2156. However, if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine whether the right was clearly established. *See* id.

Durruthy v. Pastor, 351 F.3d 1080, 1087 (11th Cir. 2003). For purposes of evaluating clearly established law, only the precedents of the United States Supreme Court, the Eleventh Circuit and the Florida Supreme Court are controlling. *See*, Amnesty Intern., USA v. Battle, 559 F.3d 1170, 1184 (11th Cir. 2009). Qualified immunity is not a close call in this case.

Plaintiff is not complaining about an act of negligence or the Defendant's failure

to understand the finer points of law. Rather, Plaintiff alleges that the individual Defendants arrested, ejected and harassed him with the specific purpose of violating his First Amendment rights; the City and its minions used brute physical force to shut Plaintiff up, to remove him from public discourse and to prevent him from accessing public officials.[9]

Through the 1970s and '80s, the Supreme Court decided a series of First Amendment cases which brought clarity and certainty to the basic rule that government cannot prohibit or censor speech on the basis of content. *See, e.g.*, Police Dep't v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290 (1972) ("the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."); Heffron v. International Soc'y for Krishna Consciousness, 452 U.S. 640, 648, 101 S.Ct. 2559, 2564 (1981) ("A major criterion for a valid time, place and manner restriction is that the restriction may not be based upon either the content or subject matter of speech."). The prohibition against content-based restrictions on speech specifically extends to speech before public bodies at public hearings. *See, e.g.*, City of Madison, Joint School Dist. No. 8 v. Wisconsin Employment Relations Commission, 429 U.S. 167, 176, 97 S.Ct. 421, 426 (1976) ("[W]hen the board sits in public meetings to conduct public business and hear the views of citizens, it may not be required to discriminate between speakers on the basis of their employment, or the

---

[9] Plaintiff alleges that, at the time he was removed from the City Commission meetings on February 12, 2007 and August 6, 2007, and from City properties, he was not disruptive and was behaving with the appropriate decorum. He further alleges that he was removed specifically because of the content of his speech and not on the basis of any neutral time, place or manner restriction. This Court must accept those well-pled facts as true.

content of their speech."); *Compare*, Jones v. Heyman, 888 F.2d 1328, 1329 (11th Cir. 1989) (Time, place and manner restrictions on speech at commission meeting are generally permissible, but may not be based on content of speech).

With respect to the Federal claims for violation of his Fourth Amendment rights and his state law claims for false arrest, battery and malicious prosecution, Plaintiff alleges in great detail that he had committed no crime, that the Defendants lacked probable cause to arrest him, and that the Defendants specifically intended to violate Grapski's constitutional rights when they brought the trumped up charges.[10] The Fourth Amendment violations complained of in this suit were calculated and intentional and the constitutional injuries were not just foreseeable, but intended. Furthermore, the law has been clearly established since at least 1988. *See*, Herren v. Bowyer, 850 F.2d 1543, 1547 (11th Cir. 1988) ("The law is 'clearly established' that an arrest without a warrant or probable cause to believe a crime has been committed violates the fourth amendment…"); *See, also*, Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990) ("We find that, at the time Defendants arrested Plaintiff, the law was clearly established that an arrest without probable cause to believe a crime had been committed violated the Fourth Amendment.").

Plaintiff's claims based on the malicious prosecution of false charges is also based

---

[10] While Plaintiff has alleged an actual intent to infringe his constitutional rights, a Fourth Amendment violation can be established with a lesser showing. Reckless disregard of the truth is sufficient to support a Fourth Amendment claim. *See, e.g.*, Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994) (No qualified immunity where an application for a warrant includes "recklessly false statements"); Thornton v. City of Tampa, 2010 WL 427737 *5 (M.D. Fla. 2010) ("Having signed the affidavit in reckless disregard for the accuracy of its contents, Officer Atiles is not entitled to qualified immunity").

on well-established law in this Circuit. *See, e.g.*, Malley v. Briggs, 475 U.S. 335, 344-45, 106 S.Ct. 1092 (1986); Jones v. Cannon, 174 F.3d 1271, 1285 (11th Cir. 1999); *See, also*, Eloy v. Guillot, 289 Fed.Appx. 339, 347 (11th Cir. 2008) (Adopting 1993 as the date when the law clearly established that there was no qualified immunity for false statements made in procuring a warrant).

The Defendants' arguments with respect to qualified immunity are superficial and merely recite the usual cases without any analysis at all. Defendants' arguments are also plainly erroneous. Most egregiously, the Defendants claim that "the Plaintiff must offer this Court some pre-existing case law… which involve a materially similar situation in which clearly held similar actions to be unconstitutional (sic)." (Doc. 30 at 13).

The case law clearly does not require Plaintiff to identify a materially identical precedent in order to defeat a claim of qualified immunity. Rather, Plaintiff can prove that the law was clearly established in any of three ways:

> The court in Vinyard identified three categories of fair and clear warning for us to examine. Id. (1) First, we look to see whether the federal statute or constitutional provision is so clear, and the conduct is so bad, that it precludes qualified immunity even in the total absence of case law. Id. Second, if the conduct is not bad enough that it violates a constitutional provision on its face, we look to case law that can be applied broadly to a number of factual situations. Id. at 1351. Third, and finally, if no broad case law is applicable, we turn to case law precedent that is tied to the facts. Id.

Estate of Kesinger v. Herrington, 381 F.3d 1243, 1250 (11th Cir. 2004), *citing* Vinyard v. Wilson, 311 F.3d 1340, 1350-52 (11th Cir. 2002). Indeed, the Supreme Court has held that a principal of law can be so well established that qualified immunity is lost even before a factually similar case is ever decided. *See*, Hope v. Pelzer, 536 U.S. 730, 740-41, 122 S.Ct. 2508, 2516 (2002) ("[G]eneral statements of the law are not inherently

incapable of giving fair and clear warning… a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'"); *See, also*, Amnesty Intern., USA v. Battle, 559 F.3d 1170, 1185 (11th Cir. 2009) (Same).

This is one of those cases where the principles of law are so well established through Supreme Court precedent that no reasonable police officer or public official could have believed that they were acting lawfully. Again, this is not instance where the Defendants were simply incompetent or faced with an ambiguous law.[11] Rather, the Amended Complaint alleges that the Defendants knew that they were violating clearly established constitutional rights and specifically intended to do so. (Doc. 24 at ¶¶ 29-34, 49-51, 61, 65, 66, 83-86, 95-97, 99-101, 107-109, 172-179, 209-212, 214-215). No public official could believe they could arrest or eject Plaintiff because they disagreed with the content of his speech. (Doc. 24 at 29, 31, 56-57, 83, 86, 95-97, 107, 108, 11, 268, 320). No public official could believe that they could arrest Plaintiff without probable cause. (Doc. 24 at ¶¶ 45, 46, 48, 65-66, 83, 85, 96-97, 111, 127, 135, 146, 165, 170, 173, 177, 208, 211, 212, 214, 226, 227, 234, 237). No public official could believe it was lawful to

---

[11] Defendants explicitly rely on the "plainly incompetent officer" standard established by Lassiter v. Alabama A & M University, Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994). (Doc. 30 at 12). That citation was ill-advised since Lassiter was expressly overruled by the Supreme Court in Hope v. Pelzer 536 U.S. at 739 fn 9, 122 S.Ct. at 2515 (2002). *See,* Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1277 (11th Cir. 2004) (recognizing abrogation of Lassiter standard). Plaintiff makes reference to the "plainly incompetent officer" standard because the facts of this case are so extreme that Plaintiff could have satisfied that now-extinct measure.

prosecute a citizen in an effort to censor their speech and keep them away from a public forum. (Doc. 24 at ¶¶ 48, 99, 120, 123, 165, 234-238, 305-310).

In addition to pleading the intentional constitutional violations with great specificity, Plaintiff has identified the particular Supreme Court and Eleventh Circuit decisions which established the law with respect to the First and Fourth Amendment claims. Plaintiff can also cite to cases both within the Eleventh Circuit and elsewhere around the country[12] which address the issue of immunity in the specific context of public speaking and access to public officials. *See, e.g.*, Musso v. Hourigan, 836 F.2d 736, 742 (2d Cir. 1988) (No immunity where citizen was removed from school board meeting because of disagreement over content of speech); Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3rd Cir. 2006) ("[If a city councilman] acted with an intent to suppress Monteiro's speech on the basis of viewpoint, she violated clearly established law and is not entitled to qualified immunity."); Hansen v. Bennett, 948 F.2d 397 (7th Cir. 1991) (Mayor not entitled to qualified immunity if he intended to remove citizen from public hearing because he disagreed with content of speech); Norse v. City Of Santa Cruz, F.3d __, 2010 WL 5097749 (9th Cir. 2010) (en banc) (Citizen removed from public meetings for, *inter alia*, "whispering to another meeting attendee" and offensive gesture stated claim for viewpoint discrimination); *Compare*, Jones v. Heyman, 888 F.2d 1328, 1329 (11th Cir. 1989); Steinburg v. Chesterfield County Planning Com'n, 527 F.3d 377,

---

[12] While cases from other Circuits are not binding in terms of creating the law, they do show that the broad principles established by the U.S. Supreme Court have been adopted across the country. In other words, these diverse, yet uniform cases show how the overarching constitutional principles have been applied to particular facts. The similarity between the facts of the reported cases and the facts of Mr. Grapski's case are quite compelling.

385 (4th Cir. 2008) (Same).

In contrast, the Defendants are unable to cite to *any* case which supports a finding of probable cause in these circumstances,[13] or which would allow content-based discrimination at public hearings, or which would allow the arrest and prosecution of a citizen engaged in peaceful political speech and dialog. It is not enough for the Defendants to decry the lack of case law on all fours with the instant case – particularly where Plaintiff can demonstrate that such cases do in fact exist. Rather, Defendants must show that, on the face of the Amended Complaint, a reasonable public official would have found that Defendants' actions comported with the law as it was commonly understood at the time. Pearson v. Callahan, *supra*. Defendants are not entitled to qualified immunity because the law clearly established by the U.S. Supreme Court and the Eleventh Circuit conclusively shows that their actions violated Plaintiff's constitutional rights.

WHEREFORE, the Plaintiff prays that the Defendants' Motion to Dismiss be denied in its entirety.

---

[13] The cases often debate the level of probable cause required to support a qualified immunity defense. This is typically described as an objective inquiry which is satisfied by "arguable probable cause". *See, e.g.*, Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009). In this instance, Plaintiff has alleged not only the absence of any probable cause but has also asserted that no objective police officer could have believed that a crime of any sort had taken place. (Doc. 24 at ¶¶ 46, 66, 96, 120, 173, 177, 212, 227, 235, 267, 305, 319, 358). Grapski further alleges that the arrests and ejections were not made in a good faith effort to enforce the law, but were intentional abuses of authority specifically calculated to violate his constitutional rights as part of a conspiracy to censor and harass him. (Doc. 24 at ¶¶ 29-34).

|  |  |
|---|---|
|  | GARY S. EDINGER & ASSOCIATES, P.A |
|  | /s/ Gary S. Edinger |
| JOSEPH W. LITTLE, Esquire | GARY S. EDINGER, Esquire |
| Florida Bar No. 196749 | Florida Bar No.: 0606812 |
| 3731 N.W. 13th Place | 305 N.E. 1st Street |
| Gainesville, Florida 32605 | Gainesville, Florida 32601 |
| (352) 273-0660 | (352) 338-4440/ 337-0696 (Fax) |
| littlegnv@gmail.com | GSEdinger@aol.com |

*Attorneys for Plaintiff*

I HEREBY CERTIFY that a true and correct copy of the foregoing Response has been furnished to JOSEPH R. FLOOD, JR., Esquire and JOSHUA B. WALKER, Esquire, Dean, Ringers, Morgan & Lawton, P.A., Post Office Box 2928, Orlando, Florida 32802-2928; and to MICHAEL J. ROPER, Esquire and CHRISTOPHER R. FAY, Esquire, Bell & Roper, P.A., 2707 E. Jefferson Street, Orlando, Florida 32803, via the CM/ECF System this 22nd day of December, 2010.

      /s/ Gary S. Edinger
GARY S. EDINGER, Esquire
Florida Bar No.: 0606812