UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**CHARLES JAMES GRAPSKI,**

    Plaintiff,

v.

**CITY OF ALACHUA, FLORIDA,**
a Florida municipal corporation,
**CLOVIS WATSON, JR.**, individually,
**JEAN CALDERWOOD**, individually,
**ROBERT E. JERNIGAN**, individually,
**GIB COERPER**, individually, and
**PATRICK BARCIA, JR.**, individually,

    Defendants.

CASE NO.: 1:10-cv-00140-MP-GRJ

## SECOND AMENDED COMPLAINT

Plaintiff brings this suit pursuant to 42 U.S.C. §1983 seeking damages arising from certain policies, practices and actions of the City of Alachua, and certain of its individual officers and representatives, which have violated Plaintiff's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution. This Second Amended Complaint is filed in accordance with the Court's Order of August 9, 2011 (Doc. 101).

### JURISDICTION

1.     This suit is brought pursuant to 42 U.S.C. §1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

2. This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution, and under 28 U.S.C. §1343(4) to secure equitable or other relief for the protection of civil rights.

3. This Court is authorized to award damages for violation of Plaintiff's constitutional rights under 42 U.S.C. §1983.

4. This Amended Complaint seeks damages for violations of GRAPSKI's rights, privileges and immunities secured by the First, Fourth and Fourteenth Amendments to the Constitution.

5. This Court may enter an award of attorney's fees pursuant to 42 U.S.C. §1988.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1366.

7. Plaintiff has satisfied the notice requirements of §768.28(6) Fla.Stat. by notifying the Mayor of ALACHUA by letters dated November 22, 2006, in regard to claims arising out of incidents that occurred in 2006, and dated February 19, 2007 and October 12, 2007, in regard to incidents that occurred in 2007. A copy of that correspondence is attached as Composite Exhibit "A" to this Amended Complaint.

8. ALACHUA received the notice letter pertaining to the 2006 incidents in 2006.

9. ALACHUA received the notice letters pertaining to the 2007 incidents in 2007.

10. Plaintiff has complied with all conditions precedent to maintaining this action or those conditions have been waived or become moot.

## VENUE

11. Venue is proper in the Northern District of Florida, Gainesville Division, since the policies and acts complained of are those of the CITY OF ALACHUA, FLORIDA, which is within the district and geographical area assigned to the Gainesville Division.

## PARTIES

12. At all times relevant hereto, Plaintiff CHARLES JAMES GRAPSKI (hereinafter referred to as "GRAPSKI") was a citizen and elector of Alachua County and the State of Florida.

13. At all times relevant hereto, the CITY OF ALACHUA, FLORIDA (hereinafter referred to as "ALACHUA" or the "CITY") was a Florida municipal corporation established in accordance with Article VIII §2, Florida Constitution or preceding constitutional provisions.

14. At all times relevant hereto, CLOVIS WATSON, JR. (hereinafter referred to as "WATSON"), was City Manager of the City of Alachua. At all relevant times, WATSON was also designated as Alachua's Police Commissioner. WATSON is sued in his individual capacity.

15. At all times relevant hereto, ALACHUA had reported to the Florida Department of Law Enforcement that WATSON was employed by ALACHUA as a full time law enforcement officer.

16. At all times relevant hereto, JEAN CALDERWOOD (hereinafter referred

to as "CALDERWOOD"), served as a representative of the City of Alachua. At times she held the position of Mayor of the City of Alachua, and at other times she served in the capacity of a City Commissioner of the City of Alachua. CALDERWOOD is sued in her individual capacity.

17. At all times relevant to allegations involving GIB COERPER (hereinafter referred to as "COERPER"), that individual served as Mayor of the City of Alachua. COERPER is sued in his individual capacity.

18. At all times relevant hereto, ROBERT E. JERNIGAN (hereinafter referred to as "JERNIGAN"), was employed by ALACHUA as Chief of Police. JERNIGAN is sued in his individual capacity.

19. At all time relevant hereto, PATRICK BARCIA, JR. (hereinafter referred to as "BARCIA") was a police officer employed by the CITY OF ALACHUA. BARCIA is sued in his individual capacity.

## FACTS

20. GRAPSKI is a political and social activist with a keen interest in the governance and operations of the CITY OF ALACHUA.

21. GRAPSKI has led a campaign to foster strict compliance with the public records laws of the State of Florida (Chapter 119) and is particularly interested in what he believes is the blatant disregard of those laws by ALACHUA. GRAPSKI has submitted frequent public records requests to the CITY on his own behalf and as a principal in a non-profit corporation known as The Open Records Project, Inc.

22. GRAPSKI has also been a vocal critic of the City administration and of certain City personnel, including Defendants WATSON, CALDERWOOD and

JERNIGAN. Part of that criticism has centered on the fact that WATSON held a variety of positions in City government in apparent violation of Florida law.

23. GRAPSKI has been a frequent speaker at public hearings, including City Commission meetings.

24. GRAPSKI has also been active in political protests and litigation against the CITY OF ALACHUA and various officials of the CITY with respect to the 2006 City election which was marred by voter fraud and widespread procedural irregularities.

25. Plaintiff has a constitutional right to petition government for redress of grievances.

26. Plaintiff has a constitutional right to engage in political speech and to speak with representatives of CITY government on matters of concern to the Plaintiff.

27. Plaintiff has a constitutional right to access public property and public officials on the same terms and conditions as other citizens of ALACHUA.

28. Plaintiff has the right under the Florida Constitution and Florida law to request and access public records.

29. The CITY and the individual Defendants, WATSON, CALDERWOOD JERNIGAN and COERPER, have engaged in a concerted campaign over the course of several years, to thwart Plaintiff's efforts to secure public records, to speak before the Alachua City Commission, to seek redress of his several grievances with government and to cause him physical harm and emotional anguish. This campaign was conducted through a serious of unlawful arrests, false prosecutions, public ridicule, banishment from CITY property, police harassment and physical assaults, all in an effort to impede and deter Plaintiff from exercising his constitutional rights and to punish him for exercising

those rights.

30. The CITY and the individual Defendants, WATSON, CALDERWOOD JERNIGAN and COERPER, further intended "to make an example of GRAPSKI" so that other citizens would be dissuaded from seeking public records and deterred from exercising their constitutional rights.

31. The campaign by the CITY and the individual Defendants, WATSON, CALDERWOOD, JERNIGAN and COERPER is the result of an actual policy of the CITY to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests, harassment and public ridicule.

32. While not reduced to writing, this policy has been established by a long course of conduct and harassment directed to Plaintiff and his supporters. Furthermore, these official policies are universally understood, consistently applied and adopted as part of the "culture" of the CITY OF ALACHUA and its Police Department.

33. Furthermore, the established policy to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests and public ridicule was the result of intentional decisions by the CITY's final policy-makers.

34. The individual or individuals charged with making the final decision as the CITY's policy-maker varies depending upon circumstances which will be elucidated in detail below. At various times and in various circumstances, WATSON, CALDERWOOD, JERNIGAN and COERPER have each acted at the final policy-maker for the CITY.

### 2006 ARREST – ALLEGED ILLEGAL RECORDING

35. The first overt actions against Plaintiff came in late April and early May of

2006.

36. At that time, GRAPSKI was a candidate for the House of Representatives of the State of Florida in the district that includes the City of Alachua within its constituency.

37. Eileen McCoy, a citizen of Alachua, commenced civil action 06 CA-1590 in the Circuit Court for the Eighth Judicial Circuit of Florida in and for Alachua County to contest Alachua's 2006 election. An organization in which GRAPSKI was a principal joined as a plaintiff in that civil action.

38. On April 28, 2006, GRAPSKI and McCoy went to ALACHUA's City Hall for the purpose of inspecting and copying public records pertaining to the 2006 election.

39. When ALACHUA's officials denied GRAPSKI's request for inspection, GRAPSKI and McCoy went to WATSON's office to request his assistance in obtaining those public records.

40. In order to document his efforts at obtaining public records from the CITY, GRAPSKI recorded his conversation with WATSON. The conversation was recorded on a tape recorder placed in plain view on WATSON's desk and WATSON consented to the recording of the conversation, which consent is evident on the recording as well as by the circumstances.

41. WATSON decided at that time that he could use the recording of his conversation as a pretext to arrest GRAPSKI to prevent him from accessing those public records and to deter GRAPSKI from his political activities in the CITY.

42. GRAPSKI returned to ALACHUA's City Hall on Monday, May 1, 2006,

for the purpose of inspecting the public records pertaining to the 2006 election. That inspection was pursuant to arrangements made with WATSON during GRAPSKI's meeting on April 28, 2006.

43. While GRAPSKI was inspecting the election records WATSON arrested GRAPSKI, or directed Chief JERNIGAN to arrest GRAPSKI, on charges that GRAPSKI had illegally recorded the conversation of April 28, 2006 referred to herein.

44. WATSON made the decision to arrest GRAPSKI while acting as ALACHUA's City Manager. As City Manager, WATSON had the authority to make this decision on behalf of ALACHUA and he made the decision as the final decision making authority for the CITY.

45. GRAPSKI's arrest on May 1, 2006 was entirely pretextual and without probable cause. The arrest was an intentional and calculated action to harass Plaintiff and to punish him for the exercise of his constitutional rights.

46. Plaintiff does not assert a claim based directly on his May 1, 2007 arrest, but the circumstances show both the policy of the CITY to abuse GRAPSKI's constitutional rights and the improper basis for the later prosecution of those false charges.

47. No reasonable police officer and no reasonable City Manager could have believed that there was any probable cause or other basis under law to arrest GRAPSKI for the perfectly legal act of recording the City Manager in the course of his duties and with his consent.

48. The CITY, WATSON and CALDERWOOD elected to press charges against GRAPSKI despite the obvious lack of probable cause to arrest or prosecute

GRAPSKI for the perfectly legal act of recording the City Manager in the course of his duties and with his consent.

49. ALACHUA, WATSON and CALDERWOOD charged GRAPSKI with a crime with the specific intent and purpose of preventing GRAPSKI from inspecting ALACHUA's public records; to retaliate against GRAPSKI for joining in the suit against ALACHUA to contest Alachua's 2006 election; and to interfere with GRAPSKI's constitutional right to instruct his representatives and to petition for redress of grievances guaranteed by the First and Fourteenth Amendments to the United States Constitution.

50. These actions were taken as part of a calculated and intentional effort to thwart GRAPSKI in his efforts to challenge the CITY's election and to bring attention to improper practices at the CITY.

51. The charges against GRAPSKI (assigned case number 2006-CF-002034-A) were ultimately dismissed by the Judge on pretrial motions and terminated in GRAPSKI's favor on November 16, 2006.

### FURTHER INTERFERENCE WITH PUBLIC RECORDS REQUESTS; EXCLUSION FROM CITY HALL

52. Notwithstanding his arrest and prosecution, GRAPSKI continued with his campaign to obtain public records, to actively participate in Alachua politics, and to petition the CITY's representatives for needed reforms.

53. The CITY and the individual Defendants responded with further efforts to sabotage GRAPSKI's activism and to infringe upon his constitutional rights and liberties.

54. In December 2006, GRAPSKI went to the offices of City Attorney Marian B. Rush to make a request to inspect and copy public records of ALACHUA maintained

in her office. As City Attorney, Rush was the custodian of the public records which Plaintiff sought and was the proper official to receive GRAPSKI's request pursuant to Chapter 119 of the Florida Statutes.

55. Marian Rush refused to accept GRAPSKI's public records request and issued a trespass warning through the Gainesville Police Department to prevent GRAPSKI from making public records requests through her office.

56. Marian Rush sent the State Attorney for the Eighth Judicial Circuit a message stating that she wanted to see GRAPSKI jailed.

57. On February 12, 2007 GRAPSKI went to ALACHUA's temporary City Hall[1] with citizens Tamara Robbins and Michael Canney for the purpose of inspecting public records and discussing ALACHUA's failure to comply with earlier public records requests.

58. ALACHUA'S record custodian, Alan Henderson, refused to provide GRAPSKI the requested public records. GRAPSKI then requested that WATSON assist him in obtaining the records.

59. WATSON refused to assist GRAPSKI in obtaining access to public records and directed GRAPSKI to leave the City Hall.

60. WATSON had no reason and no legal basis to direct GRAPSKI to leave the City Hall.

---

[1] The "temporary" City Hall was utilized by the CITY while its permanent facilities were being renovated. During the renovations, the CITY conducted all of its business from the temporary City Hall and those facilities were fully accessible to and by members of the public.

61. WATSON instructed Chief JERNIGAN to require GRAPSKI to leave the premises.

62. WATSON made the decision to eject GRAPSKI from City Hall while acting as ALACHUA's City Manager. As City Manager, WATSON had the authority to make this decision on behalf of ALACHUA and he made the decision as the final decision making authority for the CITY.

63. JERNIGAN, acting on WATSON's instructions, directed Alachua police officer Smith to issue GRAPSKI a written trespass warning.

64. WATSON, ALACHUA and its officers and agents excluded GRAPSKI from the premises of ALACHUA's temporary City Hall without probable cause and for improper purposes.

65. No reasonable police officer and no reasonable City Manager could have believed that there was any probable cause or other basis under law to exclude GRAPSKI from City Hall or to issue a trespass notice against him.

66. WATSON, JERNIGAN and ALACHUA specifically intended to interfere with GRAPSKI's constitutional rights to inspect ALACHUA's public records; to instruct his representatives and to petition for redress of grievances guaranteed by the First and Fourteenth Amendments to the United States Constitution; to retaliate against him for having exercised his First Amendment right to join in the suit against ALACHUA to contest Alachua's 2006 election; and to retaliate against him for having prevailed in case number 2006-CF-002034-A they had commenced against him.

67. GRAPSKI's inability to return to ALACHUA's City Hall deprived him of rights guaranteed by the United States Constitution to inspect ALACHUA's public

records, to petition government for redress of grievances and to instruct his representatives.

### February 12, 2007 Arrest at City Commission Meeting

68. At approximately 7:00 P.M. on February 12, 2007, GRAPSKI went to the elementary school in the City of Alachua where the ALACHUA's City Commission had convened in a regular public meeting.

69. This is a different premises from the site of ALACHUA's temporary City Hall designated in the trespass warning referred to hereinabove.

70. As a citizen and elector, GRAPSKI had a constitutional right guaranteed by the First Amendment to the United States Constitution to attend ALACHUA's City Commission meeting.

71. As a citizen and elector GRAPSKI had a constitutional right to attend ALACHUA's city commission meeting to instruct his representatives and to seek redress of grievances guaranteed by the First and Fourteenth Amendments to the United States Constitution.

72. During the period of the meeting allocated for citizen comment, GRAPSKI addressed ALACHUA's City Commission about the ongoing refusal of ALACHUA's employees and officials to respond to his public records requests and about the then-pending law suit challenging Alachua's 2006 election.

73. GRAPSKI handed CALDERWOOD, WATSON and City Attorney Rush a copy of a letter pertaining to the requests he had made to ALACHUA's officials for public records.

74. Mayor CALDERWOOD admonished GRAPSKI with what she referred to

as a "final warning" for being "disruptive."

75. GRAPSKI returned to his seat in the front row of the public audience and remained in his seat at all times material hereto.

76. Persons in the audience sitting behind GRAPSKI made comments to him and about him.

77. GRAPSKI turned in his chair without arising and in a soft voice offered to hand the persons sitting behind him a copy of the letter he had provided ALACHUA's officials to permit these persons to review it for themselves.

78. These persons indicated they did not wish to review the documents GRAPSKI proffered to them.

79. Without more, GRAPSKI retained the document and silently returned his attention to the podium.

80. GRAPSKI did not rise from his seat, did not raise his voice, did not interfere with or disrupt any speaker, and did not otherwise disturb the meeting.

81. As GRAPSKI was addressing the individuals sitting behind him, other members of the audience were also speaking to one another. GRAPSKI's actions, attitude and speaking voice were no different than any other member of the audience attending the meeting.

82. Without provocation or probable cause, Mayor CALDERWOOD summarily singled out GRAPSKI and accused him of disrupting the meeting.

83. Mayor CALDERWOOD ordered Chief of Police JERNIGAN to make GRAPSKI leave the meeting.

84. GRAPSKI had a right to attend the meeting guaranteed by the First and

Fourteenth Amendments to the United States Constitution, and Mayor CALDERWOOD had no reason, justification or probable cause to remove him.

85. Calderwood's order to have GRAPSKI removed from the ALACHUA Commission meeting was void and invalid when issued by the CITY as a violation of Plaintiff's constitutional right to petition the government for redress of grievances.

86. GRAPSKI retained his seat.

87. Mayor CALDERWOOD again directed Chief JERNIGAN to force GRAPSKI to leave the meeting.

88. As Mayor, CALDERWOOD had the authority to make this decision on behalf of ALACHUA and she made the decision to have GRAPSKI removed from the meeting as the final decision-making authority for the CITY.

89. GRAPSKI maintained his seat and voluntarily and peaceably held up his hands together so that the police could seize them if they chose to do so.

90. Chief JERNIGAN placed handcuffs on GRAPSKI's upheld hands and ordered two of ALACHUA's police officers to remove him from the meeting.

91. ALACHUA's police officers physically removed GRAPSKI from the building.

92. WATSON stepped down from the dais and, as ALACHUA's Police Commissioner and City Manager, oversaw Chief JERNIGAN and his officers as they physically removed GRAPSKI from the meeting.

93. JERNIGAN arrested GRAPSKI and charged him with trespass after warning, disorderly conduct, resisting arrest without violence, and resisting arrest with violence.

94.     GRAPSKI's arrest on February 12, 2007 was entirely pretextual and without probable cause. The arrest was an intentional and calculated action to harass Plaintiff and to punish him for the exercise of his constitutional rights.

95.     No reasonable police officer or City official could have believed that there was any probable cause or other basis under law to arrest GRAPSKI for the perfectly legal act of attending and participating in a public hearing before a city commission.

96.     There was no probable cause to arrest GRAPSKI's for any crime. The arrest was effected with malice in an effort to stifle Plaintiff's speech and to interfere with the exercise of his constitutional rights, all in furtherance of the CITY's policy to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests, harassment and public ridicule.

97.     GRAPSKI remained incarcerated in jail overnight until about 3:00 P.M. on February 13, 2007.

98.     WATSON, acting on behalf of ALACHUA, directed JERNIGAN to lobby the State Attorney and the Alachua County Sheriff in an effort to convince them to prosecute GRAPSKI in connection with his February 12, 2007 arrest. In doing so, the CITY, JERNIGAN and WATSON specifically intended to interfere with GRAPSKI's constitutional rights to attend ALACHUA City Commission meetings; to inspect ALACHUA's public records; to instruct his representatives and to petition for redress of grievances guaranteed by the First and Fourteenth Amendments to the United States Constitution; and further intended to retaliate against GRAPSKI for having exercised his First Amendment right to join in the suit against ALACHUA to contest Alachua's 2006 election; and to retaliate against him for having prevailed in case number 2006-CF-