002034-A they had commenced against him.

99. By letter dated March 1, 2007 JERNIGAN, acting for ALACHUA, provided State Attorney Bill Cervone a portfolio of several hundred pages outlining occasions in which GRAPSKI and Michael Canney (a party to the election law suit against ALACHUA) had attempted to obtain public records from ALACHUA and its employees and officials.

100. By letter of March 1, 2007, JERNIGAN, acting for ALACHUA, provided the Sheriff of Alachua County a portfolio of several hundred pages outlining occasions in which GRAPSKI and Michael Canney had attempted to obtain public records from ALACHUA and its employees and officials.

101. The State Attorney filed no information against GRAPSKI arising from the February 12, 2007 charges of trespass, disruption and resisting arrest, and the initiated prosecution against GRAPSKI terminated in his favor.

## Second Removal from City Commission Meeting

102. On the evening of Monday, August 6, 2007, GRAPSKI attended ALACHUA's City Commission meeting, intending to address them concerning his ongoing efforts to secure public records and to advocate in favor of the abolishment of the consent agenda as a routine device to enact legislation (because use of the consent agenda reduces transparency in government).

103. During the citizens' comment period, a local citizen, Robert Sharpe, told ALACHUA's City Commission that GRAPSKI was guilty of passing bad checks and asked the Commission to prevent GRAPSKI from addressing the Commission.

104. Sharpe's allegation was factually incorrect and baseless.

105. After all other speakers had concluded and before the citizens' comments portion of the meeting was closed, GRAPSKI rose to make a point of order in the way of reply to Sharpe's false allegations against him.

106. GRAPSKI was speaking during a time specifically reserved for citizen comment and had the right to address the Commission at that time. GRAPSKI did not act in a disruptive manner, did not threaten or disparage the Mayor, the Commission or any members of the audience, and he otherwise acted with appropriate decorum.

107. GIB COERPER, who was then serving as Mayor of ALACHUA, peremptorily directed JERNIGAN to remove GRAPSKI from the meeting.

108. As Mayor, COERPER had the authority to make this decision on behalf of ALACHUA and he made the decision to have GRAPSKI removed from the meeting as the final decision making authority for the CITY.

109. GRAPSKI left the meeting under protest to avoid being arrested again.

110. GRAPSKI had a right to attend the meeting guaranteed by the First and Fourteenth Amendments to the United States Constitution and Mayor COERPER had no reason, justification or probable cause to remove him.

## COLOR OF STATE LAW

111. As a political subdivision of the State of Florida, organized and operating under the laws of the State of Florida, ALACHUA and its agents, including WATSON, CALDERWOOD, JERNIGAN, and COERPER, were, and are, acting under color of state law and authority.

112. The actions and policies of ALACHUA, WATSON, CALDERWOOD, JERNIGAN and COERPER have deprived and will continue to deprive Plaintiff of rights

guaranteed and protected by the First, Fourth and Fourteenth Amendments to the United States Constitution.

113. The several arrests of the Plaintiff, and his repeated removals from public meetings and the halls of Government, are not isolated events but are part of an intentional and calculated campaign to deprive Plaintiff of his constitutional rights.

114. WATSON, CALDERWOOD, JERNIGAN and COERPER were aware at all times of the CITY policy to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests and public ridicule.

115. WATSON, CALDERWOOD, JERNIGAN and COERPER, while acting in their capacity as officers, employees and agents of the CITY OF ALACHUA conspired among themselves to bring about the repeated arrest of the Plaintiff and his exclusion from public meetings to punish him for his political activities and for his efforts to seek relief through the Courts of this State.

116. Defendants have also used physical force and intimidation to literally beat Plaintiff into submission. Plaintiff has been physically assaulted - and even threatened with a Taser - for passive and lawful resistance to false and pretextual criminal charges.

117. The crimes of which Plaintiff has been accused are entirely pretextual and the Defendants knew that there was no basis in law or fact to arrest and charge Plaintiff with any crime.

118. The arrests and prosecutions complained of in this litigation have all been resolved in Plaintiff's favor.

119. No reasonable public official could have believed that there was any basis under the law to arrest Plaintiff in these circumstances or to prosecute him on the

pretextual charges asserted, to force his removal from public meetings or to issue trespass notices barring him from accessing City Hall.

## DAMAGES AND ATTORNEY'S FEES

120. As a direct and proximate result of Defendants' unlawful acts, GRAPSKI has suffered the loss of rights guaranteed to him under the First, Fourth and Fourteenth Amendments to the United States Constitution.

121. Plaintiff's Fourth Amendment rights were violated by the unconstitutional seizure of his person and property, his unlawful arrest and detention, and the malicious prosecution of false criminal charges.

122. Plaintiff has been deprived of his First Amendment right to engage in free expression and to petition the government for redress of his grievances.

123. In addition to the loss of his constitutional rights, Plaintiff experienced physical and emotional injuries, pain and discomfort, embarrassment and humiliation, psychological harm and monetary losses.

124. Plaintiff also suffered injury to his reputation due to the concerted effort by the CITY and its officers, employees and agents, to leak false and defamatory information about him, to publicize the several false arrests of the Plaintiff and to criticize him publicly for his advocacy of constitutional rights and the right of the public to participate in government.

125. The arrest, incarceration and prosecution of GRAPSKI also forced him to withdraw his candidacy from the election for State Representative and disrupted his pursuit of an advanced degree at the University of Florida.

126. The individual Defendants engaged in a concerted campaign to deprive

Plaintiff of his First Amendment rights in violation of the United States Constitution and to subject him to physical assault and emotional trauma through repeated arrests without probable cause or even a reasonable belief that a crime had been committed. Plaintiff's right to participate as a citizen in the political process, to air his political views, to seek redress of grievances and to otherwise engage in his rights as a citizen of this democracy are basic rights guaranteed by the Constitution and long recognized in our jurisprudence. Defendants' actions in violating Plaintiff's well-established rights are completely unacceptable in a constitutional republic and should subject the individual Defendants to punitive damages.

127. Plaintiff has retained JOSEPH W. LITTLE and GARY S. EDINGER as his attorneys to represent them in this action and has agreed to pay them a reasonable fee, which fee Defendants must pay pursuant to 42 U.S.C. §1988.

## COUNT I
### (Right to Free Speech and Right to Petition – Federal First Amendment – City of Alachua)

128. Plaintiff realleges the allegations set forth in paragraphs 1 through 5 and 10 through 127, and incorporates those allegations in this Count by reference.

129. This is an action for damages against Defendant CITY OF ALACHUA, arising from the repeated arrests of the Plaintiff and other efforts to thwart his political activities in violation of Plaintiff's right of free speech and right to petition government for the redress of grievances, protected by the First and Fourteenth Amendments.

130. This Court is authorized to award Plaintiff damages for infringement of his constitutional rights pursuant to 42 U.S.C. §1983.

131. The First Amendment to the United States Constitution states that "Congress shall make no law... abridging the freedom of speech..."

132. The First Amendment to the United States Constitution guarantees to the Plaintiff the right "to petition the Government for a redress of grievances".

133. A continuing controversy has arisen between the parties concerning Plaintiff's right to free speech and rights to petition the government on matters of public, political and individual concern.

134. Plaintiff has been repeatedly arrested by the Defendants' final decisionmakers when he was attempting to petition the City of Alachua for redress of his grievances with ALACHUA and its officers, agents and employees by reviewing public records and addressing the ALACHUA City Commission in public meetings, as guaranteed by law.

135. Plaintiff maintains that his arrests were and are unlawful and were undertaken without probable cause or reasonable belief that he had committed any crime; all such charges being pretextual and in furtherance of the Defendants' efforts to silence and intimidate the Plaintiff and to deny him the ability to speak freely or to petition the government for redress of his grievances.

136. Likewise the repeated removal of the Plaintiff from City Commission meetings is unlawful and in furtherance of the Defendants' efforts to silence and intimidate the Plaintiff and to deny him the ability to speak freely or to petition the government for redress of his grievances.

137. The several arrests, prosecutions, trespasses, and involuntary removals complained of herein are not isolated events, but were part of a larger campaign by which

ALACHUA and its officers, employees and agents harassed, intimidated and physically battered Plaintiff, all in an effort to disrupt his speech and political activities, to violate his constitutional rights and to cause him personal pain, suffering and damages.

138. The violation of Plaintiff's First Amendment rights was intentional, malicious and carried out with complete disregard for the Plaintiff's constitutional rights.

139. All actions complained of herein were taken by ALACHUA under color of law, and with the approval of its final decisionmakers, for the purpose of advancing ALACHUA's policy of censoring, harassing and silencing the Plaintiff.

140. Plaintiff has suffered damages as a result of the violation of his constitutional rights.

WHEREFORE, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court award GRAPSKI compensatory damages against CITY OF ALACHUA for infringement of his constitutional rights pursuant to 42 U.S.C. §1983, and for injury to his person.

C. That this Court award Plaintiff his recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988, against all the City.

D. That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT II
### (Right to Free Speech and Right to Petition – Federal First Amendment – Clovis Watson, Jr.)

141. Plaintiff realleges the allegations set forth in paragraphs 1 through 5, 10

through 16, 18, 20 through 53, 57 through 101 and 111 through 127, and incorporates those allegations in this Count by reference.

142. This is an action for damages against Defendant CLOVIS WATSON, JR., arising from Watson's repeated arrests and prosecutions of the Plaintiff and other efforts to thwart his political activities in violation of Plaintiff's right of free speech and right to petition government for the redress of grievances, protected by the First and Fourteenth Amendments.

142. This Court is authorized to award Plaintiff damages for infringement of his constitutional rights pursuant to 42 U.S.C. §1983.

143. The First Amendment to the United States Constitution states that "Congress shall make no law… abridging the freedom of speech…"

144. The First Amendment to the United States Constitution guarantees to the Plaintiff the right "to petition the Government for a redress of grievances".

145. A continuing controversy has arisen between the parties concerning Plaintiff's right to free speech and rights to petition the government for redress of grievances on matters of public, political and individual concern.

146. A continuing controversy has arisen between the parties concerning Plaintiff's right to free speech and rights to petition the government for redress of grievances on matters of public, political and individual concern.

147. WATSON took an active role in formulating and implementing the CITY OF ALACHUA's policy of censoring, harassing and silencing the Plaintiff and gave directions to CITY personnel, including WATSON, JERNIGAN and Alan Henderson to further that policy.

148. Plaintiff has been repeatedly arrested by WATSON, or at his direction, when Plaintiff was attempting to petition the City of Alachua for redress of his grievances with ALACHUA and its officers, agents and employees by reviewing public records and addressing the ALACHUA City Commission in public meetings, as guaranteed by law.

149. Plaintiff maintains that his arrests and later prosecutions were and are unlawful and were undertaken without probable cause or reasonable belief that he had committed any crime; all such charges being pretextual and in furtherance of the Defendants' efforts to silence and intimidate the Plaintiff and to deny him the ability to speak freely or to petition the government for redress of his grievances.

150. Likewise the repeated removal of the Plaintiff, from City Commission meetings, at WATSON's direction or with his assistance, was unlawful and in furtherance of the Defendants' efforts to silence and intimidate the Plaintiff and to deny him the ability to speak freely or to petition the government for redress of his grievances.

151. WATSON was directly responsible for Plaintiff's prosecution in connection with the alleged "wiretapping" of his conversations (May 1, 2006 arrest); for Plaintiff's removal from City Hall and the attendant trespass notice on February 12, 2007; and for Plaintiff's arrest at the February 12, 2007 City Commission meeting. WATSON also gave express directions to CITY employees, including JERNIGAN and Alan Henderson, to violate Plaintiff's constitutional rights.

152. The violation of Plaintiff's First Amendment rights was intentional, malicious and carried out with complete disregard for the Plaintiff's constitutional rights.

153. Plaintiff has suffered damages as a result of the violation of his constitutional rights.

WHEREFORE, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court award GRAPSKI compensatory damages against CLOVIS WATSON, JR. for infringement of his constitutional rights pursuant to 42 U.S.C. §1983, and for injury to his person.

C. That this Court award Plaintiff his recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988, against CLOVIS WATSON, JR.

D. That this Court award Plaintiff punitive damages against Defendant CLOVIS WATSON, JR., individually, to punish him for his unlawful actions and to deter him and others from engaging in the same or similar acts in the future.

E. That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT III
### (Right to Free Speech and Right to Petition – Federal First Amendment – Jean Calderwood)

154. Plaintiff realleges the allegations set forth in paragraphs 1 through 5, 10 through 16, 18, 20 through 51, 68 through 101, and 111 through 127, and incorporates those allegations in this Count by reference.

155. This is an action for damages against Defendant JEAN CALDERWOOD, arising from the repeated arrests and prosecutions of the Plaintiff and other efforts to thwart his political activities in violation of Plaintiff's right of free speech and right to petition government for the redress of grievances, protected by the First and Fourteenth Amendments.

156. This Court is authorized to award Plaintiff damages for infringement of his constitutional rights pursuant to 42 U.S.C. §1983.

157. The First Amendment to the United States Constitution states that "Congress shall make no law… abridging the freedom of speech…"

158. The First Amendment to the United States Constitution guarantees to the Plaintiff the right "to petition the Government for a redress of grievances".

159. A continuing controversy has arisen between the parties concerning Plaintiff's rights to free speech and to petition the government for redress of grievances on matters of public, political and individual concern.

160. CALDERWOOD took an active role in formulating and implementing the CITY OF ALACHUA's policy of censoring, harassing and silencing the Plaintiff and gave directions to CITY personnel, including WATSON, JERNIGAN and Alan Henderson to further that policy.

161. As the Mayor and officer presiding over the City Commission meeting on February 12, 2007, CALDERWOOD gave the order to arrest and remove Plaintiff from that meeting.

162. The removal of the Plaintiff, from the February 12, 2007 City Commission meeting, at CALDERWOOD's direction, was unlawful and in furtherance of the Defendants' efforts to silence and intimidate the Plaintiff and to deny him the ability to speak freely or to petition the government for redress of his grievances.

163. Plaintiff maintains that his arrest on February 12, 2007 was unlawful and undertaken without probable cause or reasonable belief that he had committed any crime; all such charges being pretextual and in furtherance of the Defendants' efforts to silence

and intimidate the Plaintiff and to deny him the ability to speak freely or to petition the government for redress of his grievances.

164. CALDERWOOD was directly responsible for Plaintiff's removal and arrest at the February 12, 2007 City Commission meeting, and participated in the decision to prosecute Plaintiff on the alleged wire tapping charges (May 1, 2006 arrest).

165. The violation of Plaintiff's First Amendment rights was intentional, malicious and carried out with complete disregard for the Plaintiff's constitutional rights.

166. Plaintiff has suffered damages as a result of the violation of his constitutional rights.

WHEREFORE, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court award GRAPSKI compensatory damages against JEAN CALDERWOOD for infringement of his constitutional rights pursuant to 42 U.S.C. §1983, and for injury to his person.

C. That this Court award Plaintiff his recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988, against JEAN CALDERWOOD.

D. That this Court award Plaintiff punitive damages against Defendant JEAN CALDERWOOD, individually, to punish her for her unlawful actions and to deter her and others from engaging in the same or similar acts in the future.

E. That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT IV

### (Right to Free Speech and Right to Petition – Federal First Amendment – Robert E. Jernigan)

167. Plaintiff realleges the allegations set forth in paragraphs 1 through 5, 10 through 51, and 57 through 127, and incorporates those allegations in this Count by reference.

168. This is an action for damages against Defendant ROBERT E. JERNIGAN, arising from the repeated arrests of the Plaintiff and other efforts to thwart his political activities in violation of Plaintiff's right of free speech and right to petition government for the redress of grievances, protected by the First and Fourteenth Amendments.

169. This Court is authorized to award Plaintiff damages for infringement of his constitutional rights pursuant to 42 U.S.C. §1983.

170. The First Amendment to the United States Constitution states that "Congress shall make no law… abridging the freedom of speech…"

171. The First Amendment to the United States Constitution guarantees to the Plaintiff the right "to petition the Government for a redress of grievances".

172. A continuing controversy has arisen between the parties concerning Plaintiff's right to free speech and rights to petition the government on matters of public, political and individual concern.

173. JERNIGAN took an active role in formulating and implementing the CITY OF ALACHUA's policy of censoring, harassing and silencing the Plaintiff and gave directions to CITY personnel, including BARCIA, to further that policy.

174. Plaintiff has been repeatedly arrested by JERNIGAN, or at his direction, when Plaintiff was attempting to petition government for redress of grievances by

reviewing public records, seeking to file complaints against public officials, and addressing the ALACHUA City Commission in public meetings, as guaranteed by law. JERNIGAN has also participated in efforts to prosecute Plaintiff for his political activities.

175. Plaintiff maintains that his arrests were and are unlawful and were undertaken without probable cause or reasonable belief that he had committed any crime; all such charges being pretextual and in furtherance of the Defendants' efforts to silence and intimidate the Plaintiff and to deny him the ability to speak freely or to petition the government for redress of his grievances.

176. Likewise the repeated removal of the Plaintiff from City Commission meetings by JERNIGAN, or at his direction, is unlawful and in furtherance of the Defendants' efforts to silence and intimidate the Plaintiff and to deny him the ability to speak freely or to petition the government for redress of his grievances.

177. JERNIGAN was directly responsible for Plaintiff's prosecution in connection with the alleged "wire tapping" of WATSON's conversations (May 1, 2006 arrest); for Plaintiff's removal from City Hall and the attendant trespass notice on February 12, 2007; for Plaintiff's arrest at the February 12, 2007 City Commission meeting, and subsequent prosecution; for Plaintiff's ejection from the August 6, 2007 City Commission meeting; and for Plaintiff's arrest on August 13, 2007.

178. The violation of Plaintiff's First Amendment rights was intentional, malicious and carried out with complete disregard for the Plaintiff's constitutional rights.

179. Plaintiff has suffered damages as a result of the violation of his constitutional rights.

WHEREFORE, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court award GRAPSKI compensatory damages against ROBERT E. JERNIGAN for infringement of his constitutional rights pursuant to 42 U.S.C. §1983, and for injury to his person.

C. That this Court award Plaintiff his recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988, against ROBERT E. JERNIGAN.

D. That this Court award Plaintiff punitive damages against Defendant ROBERT E. JERNIGAN, individually, to punish him for his unlawful actions and to deter him and others from engaging in the same or similar acts in the future.

E. That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT V
### (Right to Free Speech and Right to Petition – Federal First Amendment – Gib Coerper)

180. Plaintiff realleges the allegations set forth in paragraphs 1 through 5, 10 through 13, 17 through 18, 20 through 34, 102 through 116, , and 119 through 127, and incorporates those allegations in this Count by reference.

181. This is an action for damages against Defendant GIB COERPER, arising from his efforts to thwart Plaintiff's political activities in violation of Plaintiff's right of free speech and right to petition government for the redress of grievances, protected by the First and Fourteenth Amendments.

182. This Court is authorized to award Plaintiff damages for infringement of