his constitutional rights pursuant to 42 U.S.C. §1983.

183.  The First Amendment to the United States Constitution states that "Congress shall make no law… abridging the freedom of speech…"

184.  The First Amendment to the United States Constitution guarantees to the Plaintiff the right "to petition the Government for a redress of grievances".

185.  A continuing controversy has arisen between the parties concerning Plaintiff's right to free speech and rights to petition the government on matters of public, political and individual concern.

186.  As the Mayor and officer presiding over the City Commission meeting on August 6, 2007, COERPER gave the order to remove Plaintiff from that meeting.

187.  The removal of the Plaintiff, from the August 6, 2007 City Commission meeting, at COERPER's direction, was unlawful and in furtherance of the Defendants' efforts to silence and intimidate the Plaintiff and to deny him the ability to speak freely or to petition the government for redress of his grievances.

188.  COERPER was directly responsible for Plaintiff's removal from the August 6, 2007 City Commission meeting and was present as a member of ALACHUA'S city commission when Plaintiff was unlawfully removed for the city commission meeting and arrested on February 12, 2007.

189.  The violation of Plaintiff's First Amendment rights was intentional, malicious and carried out with complete disregard for the Plaintiff's constitutional rights.

190.  Plaintiff has suffered damages as a result of the violation of his constitutional rights.

WHEREFORE, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court award GRAPSKI compensatory damages against GIB COERPER for infringement of his constitutional rights pursuant to 42 U.S.C. §1983, and for injury to his person.

C. That this Court award Plaintiff his recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988, against GIB COERPER.

D. That this Court award Plaintiff punitive damages against Defendant GIB COERPER, individually, to punish him for his unlawful actions and to deter him and others from engaging in the same or similar acts in the future.

E. That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT VI
### (Federal Equal Protection – Class of One)

191. Plaintiff realleges the allegations set forth in paragraphs 1 through 5 and 10 through 127, and incorporates those allegations in this Count by reference.

192. This is an action for damages against Defendants CITY OF ALACHUA, CLOVIS WATSON, JR., JEAN CALDERWOOD, ROBERT E. JERNIGAN, and GIB COERPER, arising from their selective enforcement of the laws against GRAPSKI in an effort to single out and punish him for the exercise of his constitutional rights, all in violation of Plaintiff's right of Equal Protection guaranteed by the Fourteenth Amendment.

193. This Court is authorized to award Plaintiff damages for infringement of

his constitutional rights pursuant to 42 U.S.C. §1983.

194. The Equal Protection Clause of the Fourteenth Amendment prohibits government from discriminating against similarly situated individuals without a rational and neutral basis for doing so.

195. The Defendants' campaign of arrests and harassment intentionally singled out Plaintiff for selective enforcement, inequitable treatment and purposeful discrimination through the unequal, unjust and oppressive administration of the City's ordinances and through illegal police action.

196. Defendants have engaged in a course of conduct that treats Plaintiff disparately from other similarly situated citizens.

197. On information and belief, GRAPSKI alleges that no other citizens have been forcibly removed from an ALACHUA City Commission meeting in the manner in which GRAPSKI was removed, nor has any other citizen been arrested on charges of disrupting a meeting of the City Commission, nor has any other citizen been arrested and prosecuted while inspecting public records in city hall as Plaintiff was in the prosecution that terminated in his favor on November 16, 2007.

198. On information and belief, GRAPSKI alleges that no other citizens have been issued a trespass notice barring them from the ALACHUA City Hall.

199. One of those trespass notices (issued on February 12, 2007) was issued to Plaintiff while in the company of his compatriots who were seeking the same public records as Plaintiff. The other citizens were not issued trespass notices even though they were similarly situated to the Plaintiff and their demands and behavior were indistinguishable from those of Plaintiff.

Page 33

200. Plaintiff was singled out for selective and unequal enforcement and suffered a unique disability imposed upon him and no other citizen of ALACHUA.

201. There exists no rational basis for treating Plaintiff in a disparate fashion as compared to every other citizen in the community.

202. The disparate treatment of the Plaintiff was motivated by an invidious purpose; to-wit: to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests, harassment and public ridicule, all in an effort to dissuade him from pursuing public records requests, from seeking political reforms, from engaging in political activities and as punishment for having exercised those fundamental constitutional rights.

203. The disparate treatment of the Plaintiff was further motivated by Defendants' desire to retaliate against Plaintiff for having sued the CITY and because Plaintiff actively defended against each of the false arrests and prosecutions undertaken by the CITY and the individual Defendants.

204. Defendants' reliance on state law and authority as a basis for their actions was entirely pretextual. Defendants knew that there was no lawful basis for their actions and no probable cause to arrest or prosecute Plaintiff for any of the actions complained of herein. The Defendants' actions were motivated entirely by an intent to harass Plaintiff and deny him the equal protection of the laws.

205. The Defendants' actions and policies, as applied to Plaintiff, violate the Equal Protection Clause of the Fourteenth Amendment.

**WHEREFORE**, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court award Plaintiff compensatory damages against CITY OF ALACHUA, CLOVIS WATSON, JR., JEAN CALDERWOOD, ROBERT E. JERNIGAN, and GIB COERPER for infringement of his constitutional rights pursuant to 42 U.S.C. §1983, and for injury to his person.

C. That this Court award Plaintiff punitive damages against Defendants CLOVIS WATSON, JR., JEAN CALDERWOOD, ROBERT E. JERNIGAN, and GIB COERPER, individually, to punish those individual Defendants for their unlawful actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

D. That this Court award Plaintiff his recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988, against all Defendants.

E. That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT VII
### (Federal Fourth Amendment Violation - February 12, 2007 Arrest)

206. Plaintiff realleges the allegations set forth in paragraphs 1 through 5, 10 through 16, 18, 20 through 34, 68 through 101, and 111 through 127, and incorporates those allegations in this Count by reference.

207. This is an action for damages against Defendants CITY OF ALACHUA, CLOVIS WATSON, JR., JEAN CALDERWOOD and ROBERT E. JERNIGAN, arising from their forced removal and arrest of the Plaintiff on February 12, 2007 in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

208. This Court is authorized to award Plaintiff damages for infringement of

his constitutional rights pursuant to 42 U.S.C. §1983.

209. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue but upon probable cause…".

210. Plaintiff had a constitutional right to attend the ALACHUA City Commission meeting on February 12, 2007 and further had the right to address the City Commission during the time set aside for citizen comment. At the conclusion of his remarks to the ALACHUA City Commission, Plaintiff had the right to remain in the audience to hear the comments of other citizens and to observe the actions and decisions of the ALACHUA City Commission.

211. CALDERWOOD had no legal basis to order GRAPSKI's removal from the ALACHUA City Commission meeting on February 12, 2007 and WATSON and JERNIGAN had no legal basis to arrest GRAPSKI.

212. No probable cause existed to detain or arrest GRAPSKI and no reasonable official could have believed that GRAPSKI was committing a crime by attending and participating in the February 12, 2007 ALACHUA City Commission meeting. The arrest was objectively unreasonable and without foundation in the law.

213. Defendants knew that there was no lawful basis to arrest GRAPSKI or to exclude Plaintiff from the February 12, 2007 ALACHUA City Commission meeting.

214. Defendants intentionally violated Plaintiff's Fourth Amendment right to be free of unreasonable seizures by arresting Plaintiff and excluding him from the February 12, 2007 ALACHUA City Commission meeting.

215. Defendants further violated Plaintiff's Fourth Amendment rights by causing him to be incarcerated in jail, by filing false criminal charges against him and by actively encouraging and participating in the wrongful prosecution of Plaintiff.

216. No reasonable police officer could have believed that probable cause existed to arrest and remove GRAPSKI or initiate a prosecution against him on these charges.

217. GRAPSKI's arrest, removal and prosecution were malicious and part of a larger campaign to stifle Plaintiff's speech and to interfere with the exercise of his constitutional rights, all in furtherance of the CITY's policy to deprive Plaintiff of his constitutional rights and liberties and state law freedoms through repeated arrests, harassment and public ridicule.

218. The individual Defendants CLOVIS WATSON, JR., JEAN CALDERWOOD and ROBERT E. JERNIGAN violated Plaintiff's Fourth Amendment rights as well as the clearly established law in this Circuit.

219. GRAPSKI suffered damages as a direct result of the unconstitutional arrest, battery and prosecution by the Defendants, CLOVIS WATSON, JR., JEAN CALDERWOOD and ROBERT E. JERNIGAN. Plaintiff's damages consist of infringement upon his Fourth Amendment rights as well as physical and emotional injuries, psychological harm, and humiliation.

**WHEREFORE**, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court award Plaintiff compensatory damages against CITY OF ALACHUA, CLOVIS WATSON, JR., JEAN CALDERWOOD and ROBERT E.

JERNIGAN for infringement of his constitutional rights pursuant to 42 U.S.C. §1983, and for injury to his person.

C. That this Court award Plaintiff punitive damages against Defendants CLOVIS WATSON, JR., JEAN CALDERWOOD and ROBERT E. JERNIGAN, individually, to punish those individual Defendants for their unlawful actions and to deter those individual Defendants and others from engaging in the same or similar acts in the future.

D. That this Court award Plaintiff his recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988, against all Defendants.

E. That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT VIII
### (Federal Fourth Amendment Violation - August 13, 2007 Arrest)

220. Plaintiff realleges the allegations set forth in paragraphs 1 through 5, 10 through 15, 18 through 34,, and 111 through 127, and incorporates those allegations in this Count by reference.

221. This is an action for damages against Defendants CITY OF ALACHUA, ROBERT E. JERNIGAN and PATRICK BARCIA, arising from the forced removal and arrest of the Plaintiff on August 13, 2007 in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

222. This Court is authorized to award Plaintiff damages for infringement of his constitutional rights pursuant to 42 U.S.C. §1983.

223. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated, and no warrant shall issue but upon probable cause…".

224. As part of the CITY's campaign to harass and embarrass GRAPSKI, JERNIGAN undertook an unwarranted and intrusive investigation of the Plaintiff concerning the negotiation of a valid check. JERNIGAN's investigation followed on the heels of two earlier police investigations which had both concluded that Plaintiff had committed no crime. The facts surrounding JERNIGAN's pretextual investigation may be summarized as follows:

A. On Sunday August 5, 2007, GRAPSKI bought gasoline at a Kangaroo gasoline and convenience store in Alachua. GRAPSKI paid by check (a nominal amount totaling slightly over forty dollars).

B. Kangaroo's electronic service did not inform Kangaroo that GRAPSKI had sufficient funds in his account because the deposit was made over the weekend and had not yet been posted. The Kangaroo operator filed a complaint with the CITY.

C. Nevertheless, GRAPSKI *did* have sufficient funds in his account. The Kangaroo station operator deposited GRAPSKI's check and GRAPSKI's bank paid it (that is, the check was never returned or dishonored, but was paid in the ordinary course).

D. An Alachua police officer investigated and filed APD Offense Event Report 2007008289, which concluded: "No charges are being filed and there is no further information to report."

E. A second Alachua officer investigated the Kangaroo station incident and made a second report, which concluded: "This incident was a follow up to CR#2007008223. No further action shall be taken by this officer regarding this incident."

F.  Despite the previous two police investigations which had concluded that GRAPSKI had not issued a bad check and had not committed any crime, Chief JERNIGAN conducted a third investigation of this $40 check incident.

G.  JERNIGAN undertook this investigation solely to uncover private information regarding GRAPSKI in an effort to embarrass and discredit GRAPSKI in the public eye.

H.  On August 8, 2007, JERNIGAN obtained GRAPSKI's check from the Kangaroo station without a warrant and without a subpoena.

I.  JERNIGAN telephoned the Millennium Bank in Alachua, spoke to a bank employee, identified himself as a police officer, and without a warrant and without a subpoena, obtained personal financial information concerning GRAPSKI's bank account.

J.  Despite documentation to the contrary, Chief JERNIGAN filed report CR#2007008223 in which he stated that GRAPSKI's check was not good on August 5, 2007. However, JERNIGAN's report CR#2007008223 also concluded: "This case is closed."

K.  The details of the investigation where leaked by the CITY to CALDERWOOD's husband who posted information about the investigation – much of it false and defamatory - over the Internet. The leaked information included information JERNIGAN obtained from his unauthorized contacts with Millennium Bank.

225.  GRAPSKI was alarmed and upset both by the CITY's access to his personal financial information and by the posting of false and defamatory materials on the Internet incorporating information leaked by CITY personnel.

226.  On Monday morning, August 13, 2007, GRAPSKI went to the

ALACHUA police station at about 9:30 A.M. to obtain the police reports pertaining to the Kangaroo incident. This was the first time GRAPSKI learned of the third investigation conducted by JERNIGAN after the formal police investigations had already been concluded.

227. At about 10:30 A.M. on August 13, 2007, GRAPSKI returned to the ALACHUA police station to file an official complaint against the ALACHUA police department and Chief JERNIGAN regarding the unauthorized access to and use of his personal financial information.

228. GRAPSKI entered the public lobby and requested to speak with JERNIGAN to make a complaint.

229. JERNIGAN would not speak with GRAPSKI so GRAPSKI requested that he be permitted to speak to the second in command for the purpose to making a complaint against JERNIGAN and others involved in wrongfully accessing his bank records.

230. GRAPSKI was told to wait in the lobby and did so for about 20 minutes.

231. GRAPSKI sat quietly and did nothing to disturb the business of the police headquarters or the members of the public present.

232. In the meantime, JERNIGAN informed WATSON that GRAPSKI had come to the police station to make a complaint and requested instructions. On information and belief, GRAPSKI alleges that WATSON instructed JERNIGAN to refuse GRAPSKI's request to file a complaint and directed JERNIGAN to remove GRAPSKI from the premises.

233. JERNIGAN then appeared in the public lobby and asked GRAPSKI to

accompany him outside the building onto the sidewalk in front of the entrance into the public lobby.

234. When outside on the sidewalk in front of the public lobby, GRAPSKI requested JERNIGAN to accept an official complaint against JERNIGAN or the ALACHUA personnel responsible for obtaining unauthorized information from Millennium Bank.

235. JERNIGAN refused to accept GRAPSKI's complaint about himself or anyone else and refused to let him make a written complaint with any other ALACHUA employee.

236. GRAPSKI continued to insist that he had a right to file a complaint.

237. After again consulting with WATSON, JERNIGAN refused to accept GRAPSKI's complaint and advised GRAPSKI that no official with the CITY would accept a complaint from him.

238. Chief JERNIGAN re-entered the public lobby of the police department building and physically locked GRAPSKI out of the public building.

239. All of these events occurred during normal business hours and the building was otherwise open to the public for business.

240. GRAPSKI knocked on the door and again asked to be permitted to file a complaint against JERNIGAN and others involved.

241. JERNIGAN and Alachua police officer BARCIA came out of the public lobby onto the sidewalk where GRAPSKI was standing.

242. GRAPSKI again asked to file a complaint against JERNIGAN and others involved.

243. JERNIGAN again refused.

244. BARCIA asked JERNIGAN, "Is he under arrest yet?"

245. GRAPSKI turned to JERNIGAN, asked if he were under arrest, and held his hands together offering to be handcuffed.

246. GRAPSKI made no threatening or aggressive act of any kind whatsoever.

247. JERNIGAN, BARCIA and another ALACHUA officer then arrested GRAPSKI on charges of trespassing. During the course of the arrest, JERNIGAN and BARCIA intentionally seized, attacked and battered GRAPSKI without his consent and without probable cause.

248. JERNIGAN and BARCIA knew that GRAPSKI had committed no crime and that no reasonable basis existed to believe that he had committed a crime.

249. JERNIGAN and BARCIA had no valid reason to arrest GRAPSKI on a trespass charge and no reason to batter him.

250. GRAPSKI's arrest on August 13, 2007 on trespass charges was entirely pretextual and without probable cause. The arrest was an intentional and calculated action to harass Plaintiff and to punish him for the exercise of his constitutional rights.

251. No reasonable police officer could have believed that there was any probable cause or other basis under law to arrest GRAPSKI for the perfectly legal act of attempting to file a complaint against a public official as part of an effort to petition government for redress of grievances.

252. As Chief of Police, JERNIGAN had the authority to make the decision to arrest GRAPSKI and to take him physically into custody, and he made the decision to arrest GRAPSKI and take him into custody as the final decision making authority for the

CITY.

253. This arrest made by ALACHUA, JERNIGAN and the City's other agents, officers and employees, was made without probable cause and for improper purposes. The arrest was objectively unreasonable and without foundation in the law.

254. JERNIGAN and BARCIA arrested and charged GRAPSKI with a crime with the specific intent and purpose of interfering with GRAPSKI's constitutional rights to instruct his representatives and to petition for redress of grievances guaranteed by the First and Fourteenth Amendments to the United States Constitution; and further intended to retaliate against him for having exercised his First Amendment right to join in the suit against ALACHUA to contest Alachua's 2006 election; to retaliate against him for having prevailed in case number 2006-CF-002034-A they had commenced against him; and to retaliate against GRAPSKI for trying to file a complaint against JERNIGAN and other officers of the CITY.

255. Additional interactions occurred between GRAPSKI and the ALACHUA officers *following* his illegal arrest which ultimately resulted in GRAPSKI facing an additional charge of battery on a law enforcement officer (Lattimer). Those interactions, and the criminal charges flowing from them, are *not* the subject of this Amended Complaint.

256. Immediately after his arrest, ALACHUA officers took GRAPSKI to a hospital emergency room for treatment for injuries he received as a result of the battery committed by JERNIGAN and BARCIA.

257. ALACHUA officers then took GRAPSKI to the Alachua County jail and booked him into the jail on various charges arising out of the incident described in the

preceding paragraphs (excluding, for purposes of this Amended Complaint, the battery charge upon officer Lattimer).

258. Ultimately, GRAPSKI was taken to the North Florida Regional Hospital in Gainesville for treatment of the injuries inflicted upon him stemming directly from his arrest and battery and proximately arising from his subsequent incarceration.

259. GRAPSKI was near death and remained hospitalized under the guard of a correctional officer for several days.

260. GRAPSKI was incarcerated for two weeks immediately after the arrest and, with some intervening periods of release, was subsequently incarcerated for 105 days, followed by additional sporadic days of incarceration.

261. JERNIGAN and ALACHUA initiated a criminal prosecution against GRAPSKI by filling a complaint with the State Attorney of the Eighth Judicial Circuit charging GRAPSKI with trespass, resisting arrest with violence, battery on JERNIGAN, BARCIA, and on Alachua police officer Lattimer.

262. JERNIGAN initiated this prosecution as ALACHUA's final decision maker and did so with WATSON's approval.

263. Based upon ALACHUA and JERNIGAN's complaint against GRAPSKI, the State Attorney filed an information in case number 01-2007-CF-003672A charging GRAPSKI *inter alia* with trespass on land after warning, resisting an officer with violence, battery upon an officer (meaning JERNIGAN), battery on officer BARCIA, and battery upon officer Lattimer

264. On November 13, 2009, a jury acquitted GRAPSKI of the charges of trespass on land after warning, resisting an officer with violence, and battery.